IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Jedidiah Murphy, | : | |
| Plaintiff, | : | |
| | : | **THIS IS A CAPITAL CASE** |
| v. | : | |
| | : | **EXECUTION SET FOR** |
| Alexander Jones, Chief of Police, | : | **OCTOBER 10, 2023** |
| Arlington, Texas | : | |
| | : | |
| | : | Case Number 1:23-CV-1170 |
| | : | |
| Ali Nasser, Assistant Attorney | : | |
| General, District Attorney Pro Tem, | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT PURSUANT TO 42 U.S.C. § 1983**

Russell D. Hunt, Jr.
Texas Bar No. 00790937
310 S. Austin Ave.
Georgetown, TX 78626
R2@rhjrlaw.com

Catherine Clare Bernhard
Texas Bar No. 02216575
P.O. Box 506
Seagoville, Texas 75159
cbernhard@sbcglobal.net

Katherine Froyen Black
Texas Bar No. 24099910
205 Blue Ridge Trail
Austin, Texas 78746
kfroyen@gmal.com

Pro Hac Vice motion pending

Pro Hac Vice motion pending

*Counsel for Jedidiah Murphy*

**INTRODUCTION**

**1.** Jedediah Murphy is scheduled to be executed on October 10, 2023. A 2001 Dallas County, Texas, jury convicted him of murdering Mrs. Bertie Cunningham while robbing and kidnapping her. Mr. Murphy's death sentence was based on a finding of "future dangerousness" by the same jury.

**2.** Mr. Murphy seeks postconviction DNA testing of evidence in the State's possession, which would demonstrate grave error in the jury's "future dangerousness" finding by acquitting him of the State's primary evidence at sentencing: an allegation of a highly-aggravated, unadjudicated past crime. He would use this favorable evidence to raise a new postconviction writ in state court; and to support a clemency application. Although Texas law maintains both procedural pathways for Mr. Murphy, it fails to provide for the threshold DNA testing he would need in order to actually traverse them.

**3.** Mr. Murphy accordingly brings this civil rights action, seeking access to the DNA testing he desperately needs.

**JURISDICTION**

**4.** This Court has jurisdiction pursuant to 28 United States Code §§ 1331, 1343(a)(3)&(4), 2201(a), 42 United States Code § 1983, and *Skinner v. Switzer*, 562 U.S. 521, 534 (2011) (postconviction state prisoner may enforce state DNA testing

statutes through § 1983 action in federal court). *See also Reed v. Goertz*, 143 S. Ct. 955 (2022) (same).[1]

**VENUE**

**5.** Venue is properly in this Court because Defendant Nassir's official office address is in the Western District of Texas.

**PARTIES**

**6.** Plaintiff Jedidiah Murphy is a United States citizen who resides in the State of Texas, incarcerated in the Allan B. Polunsky Unit of the Texas Department of Criminal Justice in Livingston, Texas, and under a sentence of death imposed by the 194th District Court of Texas. He is scheduled to be executed on October 10, 2023.

**7.** Defendant Alexander Jones is the Chief of the Arlington, Texas, Police Department. Defendant Jones, sued here in his official capacity, has custody of the evidence at issue in this complaint.

**8.** Defendant Ali Nasser is an Assistant Attorney General, for the State of Texas; and is serving by Order of the 194th District Court of Dallas County, Texas, as "prosecutor pro tem" in this matter. As "prosecutor pro tem," Defendant Nassir has control of the DNA evidence that is the subject of this action; and opposed Mr. Murphy's motion to conduct DNA testing. He is sued in his official capacity.[2]

---

[1] Given the above jurisdictional grants, this Court has additional authority under 28 United States Code § 1651(a), the "All Writs Act," by which Congress vested this Court with the authority to "issue all writs necessary or appropriate in aid of [its] jurisdiction[.]"

[2] The United States Supreme Court has recognized that district attorneys who oppose DNA testing are proper defendants in civil actions like this one. *See Reed v. Goertz*, 143 S. Ct. 955, 959 & 960 (2023) ("the state prosecutor, respondent Bryan Goertz,

## PERTINENT BACKGROUND AND PROCEDURAL HISTORY

**9.**  To secure a death sentence for Mr. Murphy, the State had to prove beyond a reasonable doubt not only that he was guilty of Mrs. Cunningham's murder, but also that, beyond a reasonable doubt, "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Art. 37.071 §2(b)(1) ("future dangerousness").

**10.** The State's evidence of "future dangerousness" tied Mr. Murphy to two unadjudicated violent crimes from a single day some years prior: a kidnapping and a robbery of two women in other Texas cities, both previously-unsolved. The kidnapping victim gave Mr. Murphy's jury a graphic account of her traumatizing experience (including her terror of death and the serious injuries she received while escaping from a moving car). She further testified that after seeing Mr. Murphy's arrest and photograph on TV for Mrs. Cunningham's murder years later, she determined that he was the perpetrator of her kidnapping as well.

---

agreed to test several pieces of evidence, but otherwise opposed the motion and refused to test most of the evidence. . . . The state prosecutor, who is the named defendant, denied access to the evidence and thereby caused Reed's injury."). Justice Kavanaugh's majority opinion in *Reed* rejected the dissenting Justice Thomas's view that the district attorney was the wrong party, and that Reed was merely trying to mask a challenge to the Texas Court of Criminal Appeals's holding against DNA testing. *Id.* at 967 (Thomas, J., dissenting) ("While his complaint purports to bring an original action against the district attorney, in reality, it seeks appellate review to redress an alleged injury inflicted by the CCA's adverse decision . . . . The gravemen of Reed's claim – made clear again and again throughout his complaint – is that the CCA violated his due process rights through its reasoning in his case.").

11. Mr. Murphy tried to raise doubt about the kidnapping victim's identification through psychological testimony about memory; and an imperfect alibi. But the victim's identification and testimony about the aggravated ordeal was powerful.

12. Unlike most capital murder penalty trials in Texas, particularly from this timeframe, the State did not present any expert testimony in support of "future dangerousness"; nor did they present any victim impact testimony concerning Mrs. Cunningham. As a result, the testifying kidnapping victim's testimony largely carried the State's burden of proof as to "future dangerousness."

13. Years after his trial, Mr. Murphy learned new information that cast more doubt on the reliability of the kidnapping victim's identification: the victim had expressed uncertainty about her identification to the lead investigator and to her mother; and the same lead investigator had his own significant doubts about the link to Mr. Murphy. Mr. Murphy attempted to get postconviction relief from these revelations; but to no avail.

14. Mr. Murphy's state habeas litigation ended in March 2012;[3] and his federal habeas litigation ended in February 2019.[4] Both jurisdictions procedurally barred his claim concerning exculpatory evidence in the unadjudicated crimes.[5]

---

[3] *Ex parte Murphy*, No. WR-70832-02 (Tex. Crim. App. March 21, 2012) (per curiam).This was an attempted subsequent state postconviction writ. Mr. Murphy's initial state postconviction litigation ended in March 2009. *Ex parte Murphy*, No. WR-70,832-01, 2009 Tex. Crim. App. Unpub. LEXIS 227 (Mar. 25, 2009). His direct appeal had ended in 2003. *Murphy v. State*, 112 S.W.3d 592 (Tex. Crim. App. 2003).

[4] *Murphy v. Davis*, 901 F.3d 578 (5th Cir. 2018), *cert. denied*, 139 S.Ct. 1263 (2019).

[5] *Supra, footnotes 3 & 4;* 3:10-cv-163N, Dkt. No. 37 (adopting Docket Entry 35).

**15.** Mr. Murphy and his then-counsel terminated their representation agreement in May 2019. Upon receiving notice in November 2022 that the State wished to set a date for Mr. Murphy's execution, the District Court of Dallas County appointed Mr. Murphy new counsel.[6]

**16.** On March 24, 2023, Mr. Murphy's new state counsel filed a Motion for Post Conviction Forensic DNA Testing in the District Court of Dallas. The motion sought "touch DNA" testing of evidence collected in the unadjudicated crimes which could have contained such biological evidence.[7]

**17.** Chapter 64 of the Texas Code of Criminal Procedure provides for the State's release of evidence for postconviction DNA testing upon a showing of "a reasonable likelihood of containing biological material," Art. 64.01(a-1), which was "secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense, but . . . was not previously subjected to DNA testing[.]" Art. 64.01(b) & (b)(1). The statute creates a right to testing if a convicted person can establish: reasonable likelihood of biological material

---

[6] Prior counsel had represented Mr. Murphy in both state and federal court; thus, their representation of Mr. Murphy in federal court ended in May 2019 as well. The Federal District Court for the Northern District of Texas, Dallas Division, appointed Mr. Murphy new federal habeas counsel in June 2023. *See Murphy v. Davis*, 3:10-cv-163-N, Dkt. No. 56 (NDTX June 26, 2023).

[7] The kidnapping occurred in Arlington, Texas, and perpetrator fled with the victim's car. The same perpetrator then committed a robbery of another woman in Wichita Falls, Texas; and the Arlington victim's car was also found broken-down and abandoned in Wichita Falls. After the car was returned to the Arlington victim, she located physical property in the car that did not belong to her, and that property was collected by the Arlington Police Department. Biological evidence from the true perpetrator — at minimum "touch DNA" – likely would have been left on that property.

suitable for testing; that "identity was or is an issue in the case"; and that, by a preponderance of evidence, "the person would not have been convicted if exculpatory results had been obtained through DNA testing." Art.64.03(a)(1)&(a)(2). *See also* Art. 64.03(c) (upon the above showing, the court "shall" order testing). If an unidentified DNA profile is developed from the evidence, the State is further required to run it through the FBI's CODIS Database, and a Texas DNA database. Art. 64.035. The Chapter finally requires the state court, after testing is complete, to "hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted." Art. 64.04.

18. Consistent with established Texas caselaw interpreting Chapter 64,[8] the District Court denied Mr. Murphy's Chapter 64 Motion "as a matter of law because he seeks to test only punishment-related evidence." *State v. Murphy*, No. F00-02323-NM (Dist. Ct. Dallas Apr. 25, 2023). The court also found that Mr. Murphy had not shown by a preponderance of evidence that the Motion was not filed for purposes of delay. *Id*. Mr. Murphy appealed the trial court's denial to the Texas Court of Criminal Appeals, which has not yet ruled. *Murphy v. State*, No. AP-77,112 (TCCA).

**FIRST AND SECOND CLAIM FOR RELIEF**

19. Mr. Murphy incorporates by reference each statement and allegation set forth throughout this Complaint as if fully set forth herein.

---

[8] *See Ex parte Gutierrez*, 337 S.W.3d 883, 901 (Tex. Crim. App. 2011).

20. Claims One and Two raise a facial procedural due process challenge to Texas's postconviction and DNA testing procedures. Mr. Murphy's procedural due process rights are being violated with respect to two legal processes in which he has a substantive right: the right to use new DNA evidence to raise a subsequent postconviction claim in state court that he is "innocent of the death penalty" (**Claim One**); and the right to present the same evidence in a clemency petition (**Claim Two**).

21. Chapter 64 of the Texas Code of Criminal Procedure grants convicted persons like Mr. Murphy a statutory right to DNA testing. *See Paragraph 17, supra.*

22. A convicted person under sentence of death may then use new exculpatory DNA results to raise a subsequent postconviction claim that he is "innocent of the death penalty," *i.e.* if the jury would not have found "future dangerousness" as a result.[9] Art. 11.071 §5(a)(3) ("by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial[.]").[10]

---

[9] *See Sawyer v. Whitley*, 505 U.S. 333, 345 (1992) ("Sensible meaning is given to the term 'innocent of the death penalty' by allowing a showing in addition to innocence of the capital crime itself a showing that there was no aggravating circumstance or that some other condition of eligibility had not been met.").

[10] *See Rocha v. Thaler*, 626 F.3d 815, 823 (5th Cir. 2010) ("The Texas legislature incorporated in §5(a)(3) both *Sawyer's* definition of 'actual innocence of the death penalty' and *Sawyer's* clear-and-convincing standard of proof for such a claim."); *Ex parte Blue*, 230 S.W.3d 151, 162 (Tex. Crim. App. 2007) (Texas Legislature "apparently intended to codify, more or less, the doctrine found in *Sawyer v. Whitley*.").

**23.** Together, Chapter 64 and Article 11.071 §5(a)(3) create a liberty interest in demonstrating "innocence of the death penalty" with new DNA evidence. This is a "substantive right" created by the State of Texas.[11]

**24.** However, Chapter 64, as interpreted by the Texas Court of Criminal Appeals, contains a significant limitation: Article 64.03(a) expressly guarantees DNA testing of evidence proving innocence of the offense of conviction; but it does not extend to evidence proving "innocence of the death penalty."

**25.** Thus, although the State of Texas provides Mr. Murphy a theoretical process to challenge his death sentence based on the DNA testing he seeks, it precludes him from actually doing so. The Texas statutory scheme thus violates due process because the State has granted a liberty interest in demonstrating "innocence of the death penalty" with new DNA evidence via postconviction procedures; but Chapter 64 is inadequate to vindicate those procedures.[12] (**Claim One**.)

---

[11] *See Gutierrez v. Saenz et al.*, No. 1:19-cv-185, Dkt. No. 141, p.23 (S.D.Tx. Mar. 23, 2021) ("Texas has also established a substantive right to bring a subsequent habeas petition for a person convicted of the death penalty when that person can show 'by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury....'") (quoting Art. 11.071 §5(a)(3)); *Emerson v. Thaler*, 544 F. App'x 325, 327-28 (5th Cir. 2013) (unpub.) ("Texas has created a right to post-conviction DNA testing in Article 64 of the Texas Code of Criminal Procedure. Thus, while there is no freestanding right for a convicted defendant to obtain evidence for postconviction DNA testing, Texas has created such a right, and, as a result, the state-provided procedures must be adequate to protect the substantive rights provided.") (internal quotations and brackets omitted) (quoting *Elam v. Lykos*, 470 F. App'x 275, 276 (5th Cir. 2012) (unpub.)).

[12] *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (concluding that federal courts may disturb state postconviction procedures if they are "fundamentally inadequate to vindicate the substantive rights provided"); *Emerson*, 544 F. App'x at 327 ("Although states are under no obligation to provide

**26.** The Federal District Court for the Southern District of Texas has issued a declaratory judgment stating just that. *Gutierrez v. Saenz et al.*, No. 1:19-cv-185, Dkt. No. 141, p.23 (S.D.Tx. Mar. 23, 2021). It explained that Article 11.071 §5(a)(3) is "irreconcilable" with Chapter 64, because the former "grants the substantive right to file a second habeas petition with a clear and convincing showing of innocence of the death penalty in Article 11.071," yet Chapter 64 "denies the petitioner access to DNA evidence by which a person can avail himself of that right." *Gutierrez*, No. 1:19-cv-185, Dkt. No. 141, at 24. Thus, the "bar on Chapter 64 DNA testing to demonstrate innocence of the death penalty renders Article 11.071 §5(a)(3) illusory." *Id*. In other words, "Texas procedure creates a process which gives a person sentenced to death the substantive right to bring a subsequent habeas action under Article 11.071 §5(1)(3), but then barricades the primary avenue for him to make use of that right." *Id*. at 24-25. Thus, Chapter 64 "denies a habeas petitioner sentenced to death his rights granted by the State of Texas and protected under the Due Process Clause of the Constitution." *Id*. at 25, citing *Osborne*, 557 U.S. at 69.

**27.** Mr. Murphy also raises a claim that the same provision of Chapter 64 (limiting DNA testing to evidence relevant to innocence of the crime) unconstitutionally limits his ability to seek executive clemency. The Texas Court of Criminal Appeals has recognized that clemency is a legitimate goal for which to seek DNA testing under

---

mechanisms for postconviction relief, when they choose to do so, the procedures they create must comport with due process and provide litigants with a fair opportunity to assert their state-created rights.").

Chapter 64.[13] The Due Process Clause provides baseline constitutional safeguards to the clemency process,[14] and can be violated when the state inhibits an individual's ability to present his evidence in support.[15] Mr. Murphy seeks to develop DNA evidence relevant to his "innocence of the death penalty" to present as powerful support of his clemency petition, but the state has blocked his ability to do so. This, too, violates his procedural due process rights. (**Claim Two**.)

**THIRD AND FOURTH CLAIMs FOR RELIEF**

28. Mr. Murphy incorporates by reference each statement and allegation set forth throughout this Complaint as if fully set forth herein.

29. Under the First and Fourteenth Amendments, inmates have a right to "adequate, effective and meaningful" access to the courts.[16] This includes requiring "States to shoulder affirmative obligations to assure all prisoners meaningful access

---

[13] *Routier v. State*, 273 S.W.3d 241, 259 n.76 (Tex. Crim. App. 2008) (even if the requested DNA results would not ultimately establish factual innocence to a high enough degree of certainty to warrant postconviction relief from the court, "that does not render the DNA testing useless to her. She may still present such evidence to the executive branch of state government in the form of a clemency petition."). *See also State v. Holloway*, 360 S.W.3d 480, 489 n.58 (Tex. Crim. App. 2012) ("If the *Elizondo* actual-innocence standard cannot be met by a habeas applicant following favorable DNA results pursuant to a Chapter 64 motion, however, he or she may yet have an additional avenue of relief in the form of a state clemency petition."), *overruled on other grounds, Whitfield v. State*, 430 S.W.3d 405, 409 (Tex. Crim. App. 2014).

[14] *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 288-89 (1998) (O'Connor, J., concurring).

[15] *See, e.g., Noel v. Norris*, 336 F.3d 648, 649 (8th Cir. 2003) *Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000).

[16] *Bounds v. Smith*, 430 U.S. 817, 822 (1977), *abrogated in part by Lewis v. Casey*, 518 U.S. 343 (1996).

to the courts."[17] "[I]nmates must have a reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid."[18] (**Claim Three**.)

30. In addition, 18 U.S.C. § 3599(e) entitles Mr. Murphy to representation through "all available post-conviction process," including applications for stays of execution and clemency proceedings.[19] Available information indicates that Mr. Murphy's jury found his "future dangerousness" on the basis of false allegations. Counsel has an obligation to raise this strong claim in "all available post-conviction process" and clemency proceedings; but new DNA evidence establishing this "innocence of the death penalty" claim is essential to doing so. (**Claim Four**.)

31. By virtue of the above stated facts, Defendants have therefore deprived Mr. Murphy of his First and Fourteenth Amendment right to access the courts, and his statutory right to counsel, by obstructing his ability to obtain evidence for use in court and clemency proceedings.

**REQUEST FOR RELIEF**

---

[17] *Id.* at 824.

[18] *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).

[19] *Wilkins v. Davis*, 832 F.3d 547, 557–58 (5th Cir. 2016). *See also Harbison v. Bell*, 556 U.S. 180, 194 (2009) ("In authorizing federally funded counsel to represent their state clients in clemency proceedings, Congress ensured that no prisoner would be put to death without meaningful access to the 'fail-safe' of our justice system.") (citing *Herrera v. Collins*, 506 U.S. 390, 415 (1993)).

32. Both declaratory and injunctive relief are warranted and authorized by law. *See Reed*, 143 S. Ct. at 960-61 (2023) (plaintiff's 1983 suit raising a procedural due process claim about Texas's Chapter 64 proceedings was properly brought, for both declaratory and injunctive relief, without offending Texas's sovereign immunity or the *Rooker-Feldman* doctrine).

33. Mr. Murphy seeks declaratory judgment that:

    i.    Texas's Article 64.03(a)(2)'s[20] limitation of postconviction DNA testing to evidence exculpating a movant of his crime of conviction – and not including evidence of "innocence of the death penalty" – violates the Constitution's guarantee of procedural due process;

    and

    ii.    Defendants' enforcement of that unconstitutional provision of Article 64.03(a)(2) further violates the Constitution's guarantee of procedural due process.

34. Mr. Murphy also seeks injunctive relief ordering:

    i.    Defendant Nassir not to enforce the above-described unconstitutional limitation in Article 64.03(a)(2), such as by opposing further requests from Mr. Murphy on that basis;

    and

    ii.    Defendant Jones not to enforce the above-described unconstitutional limitation in Article 64.03(a)(2), such as by declining to produce physical evidence for testing on that basis.

---

[20] As interpreted by the Texas Court of Criminal Appeals in binding state-court precedent. *Ex parte Gutierrez*, 337 S.W.3d 883, 901 (Tex. Crim. App. 2011).

**35.** Mr. Murphy further seeks any other necessary and appropriate relief pursuant to the All Writs Act, to aid in this Court's exercise of jurisdiction in this action in general. 28 U.S.C. § 1651(a).

Respectfully Submitted,

Catherine Clare Bernhard
Texas Bar No. 02216575
P.O. Box 506
Seagoville, Texas 75159
972-294-7262
cbernhard@sbcglobal.net
Pro Hac Vice motion pending

Katherine Froyen Black
Texas Bar No. 24099910
205 Blue Ridge Trail
Austin, Texas 78746
kfroyen@gmail.com
Pro Hac Vice motion pending

Russ Hunt, Jr.
Texas Bar No. 00790937
310 S. Austin Ave.
Georgetown, Texas 78626

*Counsel for Jedidiah Murphy*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the 26th day of September, 2023, I served the

foregoing pleading on the following persons by ECF filing and first class mail:

Ali Nassir, Assistant Attorney General
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548
Ali.nasser@oag.texas.gov


Molly Shortall
Arlington City Attorneys Office
MS 63-0300
P.O. Box 90231
Arlington, Texas 76004-3231
CityAttorneysOffice@ArlingtonTX.gov


Russell D. Hunt, Jr.

310 S. Austin Avenue

Georgetown, Texas 78626

r2@rhjrlaw.com

512-930-0860/fax 512-857-0746

Attorney for Jedidiah Murphy