IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Jedidiah Murphy, | : | |
|     Plaintiff, | : | |
| | : | **THIS IS A CAPITAL CASE** |
| v. | : | |
| | : | **EXECUTION SET FOR** |
| Alexander Jones, Chief of Police, | : | **OCTOBER 10, 2023** |
| Arlington, Texas | : | |
| | : | Case No. 1:23-cv-01170-RP |
| | : | |
| Ali Nasser, Assistant Attorney | : | |
| General, District Attorney Pro Tem, | : | |
| | : | |
|     Defendants. | : | |

## REPLY IN SUPPORT OF MOTION FOR STAY OF EXECUTION

Jedidiah Murphy, a prisoner on Texas's death row, is scheduled to be executed on October 10, 2023. On September 26, 2023, through undersigned counsel, he filed a 42 U.S.C. § 1983 action concerning the State's interference with his ability to obtain DNA testing (Docket No. 6). He also moved for a stay of execution, because the Defendants have not yet answered the complaint, and their deadline for answering will come after Mr. Murphy's scheduled execution (Docket No. 9). Defendant Nassir responded in opposition to Mr. Murphy's motion for a stay (Docket No. 12). Defendant Jones took no position regarding the motion (Docket No. 13).

The primary reason this Court should grant the stay of execution and allow Mr. Murphy to proceed with his § 1983 complaint is that the important issues his

1

complaint alleges are currently under consideration in the Fifth Circuit Court of Appeals, which could decide them in his favor. *See Gutierrez v. Saenz*, No. 21-70009.

The factors this Court should consider with respect to Mr. Murphy's request for a stay of execution are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and
>
> (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)).

As explained below and in his Motion for a Stay of Execution, Mr. Murphy has made a strong showing that he is likely to succeed on the merits of his § 1983 claim and that he will suffer irreparable injury if the State is allowed to proceed with his execution without permitting him to litigate his § 1983 claim. Further, the State will not suffer substantial injury if his execution is delayed until his § 1983 claim is resolved, and the State–in addition to the public–has an interest in the adjudication of the rights Mr. Murphy seeks to vindicate through his § 1983 action, because they pertain to exculpatory evidence that could show that Mr. Murphy did not commit a serious extraneous offense – a kidnapping – that was introduced against him at his capital trial.

**<u>Mr. Murphy Has Made a Strong Showing That He Is Likely to Succeed on the Merits of His § 1983 Claim.</u>**

First and foremost, Mr. Murphy is entitled to a stay because he can demonstrate a high likelihood of success on the merits of his § 1983 claim. Courts describe the movant's burden as requiring a "strong" or "substantial" likelihood of success. *See In re Garcia*, 756 F.App'x. 391, 396 (5th Cir. 2018); *Sells v. Livingston*, 561 F. App'x. 342, 343 (5th Cir. 2014); *Sepulvado v. Jindal*, 729 F. 3d 413, 417 (5th Cir. 2013). The likelihood of success factor weighs in Murphy's favor.

Mr. Murphy has made a strong showing that he has a high likelihood of success in his claims because, as noted in Defendant's Response In Opposition to Mr. Murphy's motion, a sister district court has issued a declaratory judgment that Chapter 64 is unconstitutional for the exact reasons that Murphy argues. The United States District Court for the Southern District of Texas has already held that the very same Texas practice violates the federal constitution for precisely the reasons Murphy alleges in his complaint. *Gutierrez v. Saenz et al.*, No. 1:19-cv-185, Dkt. No. 141 (S.D.Tx. Mar. 23, 2021). Although the opinion of the Southern District court in *Gutierrez* is not binding on this Court, a decision of the Fifth Circuit Court of Appeals that has taken up the issue, which was argued before a three-judge panel on September 20, 2023, would be.

**<u>Mr. Murphy Has Also Made a Strong Showing That He Would Suffer Irreparable Harm Absent a Stay, That the State Would Not Suffer Substantial Harm, and That the Public Interest Is Best Served By a Stay</u>**

The remaining *Nken* factors do not tip the scales toward allowing the scheduled execution to go forward. In a capital case, "the possibility of irreparable injury weighs

3

heavily in the movant's favor, especially when his claim has some merit." *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) (quotation omitted); *see also Gutierrez v. Saenz,* 818 F.App'x. 309, 314 (5th Cir. 2020).

A stay of execution in this case also serves the public interest. The public has an interest in seeing the State enforce its judgments, to be sure; but the public interest is not merely in seeing the execution carried out, but "in having a just judgment." *Arizona v. Washington,* 434 U.S. 497, 512 (1978). And the public's confidence in the criminal justice system is undermined when the State carries out executions that violate our constitutional norms. The public, as well as Mr. Murphy, has an interest in the issues that Mr. Murphy's claim invokes. The Arlington/Wichita Falls crimes that the State introduced as aggravators at the punishment phase of his trial were never charged, and no one was ever convicted of them. Mr. Murphy has steadfastly maintained his innocence of these crimes and already uncovered further exculpatory evidence that tends to prove he did not commit them. In addition to further exonerating Mr. Murphy of these uncharged crimes, the touch DNA evidence Murphy sought through postconviction DNA testing could shed light on the actual perpetrator of these crimes and help bring them to justice.

**The DNA Testing to Which Mr. Murphy Seeks Access is Not "Immaterial" and Mr. Murphy Meets the "Injury" Prong of *Nken***

At the punishment phase of Mr. Murphy's trial, Sheryl Wilhelm's testimony about the uncharged kidnapping was more than just a piece of State's evidence in support of his supposed continuing threat to society. Ms. Wilhelm's vivid account of her terrifying abduction at gunpoint in her vehicle was the most highly-charged and

inflammatory testimony given in the whole of Mr. Murphy's trial. That kidnapping was the crux of the State's case for future dangerousness. Combined with an instruction that Mr. Murphy would be eligible for parole in 40 years if sentenced to life in prison, Ms. Wilhelm's testimony virtually assured a death sentence for Mr. Murphy, in spite of his partial alibi and the fact that Ms. Wilhelm's faulty out-of-court identification of him occurred three years after the fact. Additional evidence that exculpated Mr. Murphy, in the form of "touch DNA" testing results that showed another person's DNA on the evidence from the crime, is far from immaterial to the issue of Mr. Murphy's innocence of the death penalty.

Defendant Nassir argues that this supposed "immateriality" of the sought DNA testing undercuts Mr. Murphy's claim of irreparable injury absent a stay. But the Fifth Circuit has made clear that a claim of irreparable injury need not be taken so far into the weeds. "In a capital case, the possibility of irreparable injury weighs heavily in the movant's favor. . . . we must be particularly certain that the legal issues 'have been sufficiently litigated,' and the criminal defendant accorded all the protections guaranteed him by the Constitution of the United States." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (quoting *Evans v. Bennett*, 440 U.S. 1301, 1303 (1979) (Rehnquist, J., granting a stay of execution)).

Preliminarily, Defendant Nassir erroneously assumes that Mr. Murphy would attempt to reverse the result of his previous state-court Chapter 64 litigation. That is not possible, nor is it what Mr. Murphy seeks with the present lawsuit. If Defendant Nassir's arguments were taken to mean that Mr. Murphy could not win a

5

*new* Chapter 64 motion, such argument is highly speculative and likely wrong. Mr. Murphy requests in this suit an injunction against Defendants from invoking the unconstitutional statute to oppose him in a future court proceeding. Furthermore, Mr. Murphy seeks to enjoin Defendants from opposing his DNA testing on that basis in any forum, including in response to an informal request. As the Supreme Court noted in *Reed v. Goertz*, 143 S. Ct. 955, 959 (2023), Texas prosecutors have the authority to agree to test evidence even without court action, and Defendant Jones also possesses discretion to release evidence in his department's possession. Either or both may agree to a future request for DNA testing, should this Court rule in Mr. Murphy's favor.

Beyond that, Defendant Nassir goes to great lengths speculating how and why Mr. Murphy would ultimately fail in a subsequent state habeas writ, even if the DNA results do exculpate him. But that is not the issue before the Court in deciding whether to grant Mr. Murphy a stay. And Mr. Murphy could use exculpatory DNA results not only in future state court litigation, but also in a persuasive application for executive clemency – an independent due process claim in his complaint.

All speculation aside, this Court's inquiry is not whether Mr. Murphy is likely to succeed in ultimately vacating or commuting his death sentence; nor is it whether, after winning the present federal action, Mr. Murphy may ultimately end up executed one day nonetheless. The pertinent question under the "injury" prong of *Nken*, 556 U.S. at 434, is whether, *absent* a stay, he will be irreparably injured. The single answer to that question is indisputable: yes, because – as recognized and given

significant weight by the Fifth Circuit in *O'Bryan*, absent a stay he will be executed in a matter of days.

**The § 1983 Action Is Not "Purposefully Dilatory"**

Further, counsel did not engage in dilatory tactics in bringing a request for DNA testing of this punishment-phase evidence under Chapter 64. Undersigned counsel were appointed to represent Mr. Murphy in November 2022 (Attorney Bernhard) and on June 26, 2023 (Attorney Black). Prior to the appointment of undersigned counsel, Mr. Murphy was unrepresented for nearly four years. Ms. Bernhard brought the Motion for Post Conviction Forensic DNA Testing in the District Court of Dallas in March 2023. The trial court denied the motion on April 25, 2023; Mr. Murphy appealed the denial of the motion on May 2, 2023, and the CCA affirmed the trial court's denial of the motion on September 26, 2023. Through counsel, Mr. Murphy filed his 1983 action in this Court the same day – September 26, 2023.

**In Addition to this Court's Equitable Authority under *Nken* to Stay Mr. Murphy's Execution, the All Writs Act Empowers this Court to Do the Same in Aid of its 1983 Jurisdiction**

Defendant's Opposition does not address an alternative to the above authority, which is that this Court has the power to stay Mr. Murphy's execution under 28 United States Code § 1651(a), the "All Writs Act," by which Congress vested this Court with the authority to "issue all writs necessary or appropriate in aid of [its]

jurisdiction[.]" Here, this Court has jurisdiction to hear Mr. Murphy's civil rights action and thus has authority to act in aid of that jurisdiction.[1]

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, and given the high stakes involved, the balance of the equities weighs clearly in favor of staying Mr. Murphy's execution.

Respectfully Submitted,

_/s/_____
Katherine Froyen Black
Attorney for Jedidiah Isaac Murphy

Texas Bar No. 24099910
205 Blue Ridge Trail
Austin, Texas, 78746
(415) 847-6127
kfroyen@gmail.com

Catherine Clare Bernhard
Texas Bar No. 02216575
P.O. Box 506
Seagoville, Texas 75159
cbernhard@sbcglobal.net

---

[1] This Court's authority under the All Writs Act to aid in its authority to hear Mr. Murphy's civil rights action exists independent of whether this Court possesses separate authority under 18 U.S.C. 3599, *McFarland v. Scott*, 512 U.S. 849, 459 (1994), and *Harbison v. Bell*, 556 U.S. 180, 194 (2009). The State disputed the latter in its Opposition but did not address the former.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the 6th of October, I served the foregoing pleading on the following persons by e-mail and/or ECF filing:

>Ali Nasser, Assistant Attorney General
>Office of the Attorney General of Texas
>P.O. Box 12548
>Austin, Texas 78711-2548
>Ali.nasser@oag.texas.gov
>
>Josh Humphreys
>Arlington City Attorney's Office
>MS 63-0300
>P.O. Box 90231
>Arlington, Texas 76004-3231
>Josh.Humphreys@arlingtontx.gov


_____/s/_____
Katherine Froyen Black