FILED
October 06, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____Julie Golden_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **JEDIDIAH MURPHY,** § <br> TDCJ No. 999392, § <br> § <br> **Plaintiff,** § <br> § <br> v. § <br> § <br> **ALEXANDER JONES,** § <br> Chief of Police, Arlington, Texas; and § <br> § <br> **ALI NASSAR,** § <br> Assistant Attorney General, § <br> District Attorney Pro Tem, § <br> § <br> **Defendants.** § | CIVIL NO. A-23-cv-01170-RP <br><br> *  CAPITAL CASE  * <br><br> EXECUTION SET FOR <br> OCTOBER 10, 2023 |

### ORDER ON MOTION TO STAY EXECUTION

Plaintiff Jedidiah Murphy, a Texas death-row inmate, is scheduled to be executed on October 10, 2023. Two weeks before his scheduled execution, Murphy filed a civil-rights complaint under 42 U.S.C. § 1983, arguing that the denial of his motion for DNA testing in state court denied him the right to due process of law, access to the courts, and his statutory right to counsel. (ECF No. 6). Murphy also filed a motion for stay of execution. (ECF No. 9). Defendant Nassar opposed Murphy's stay request but has not yet answered the complaint. (ECF No. 12). Defendant Jones took no position regarding the motion to stay. (ECF No. 13). For the reasons discussed below, the Court will grant Murphy's motion to stay.

### I. Background

In June 2001, Murphy was convicted and sentenced to death by a Texas jury for the capital murder of 80-year-old Bertie Cunningham. During the punishment phase of trial, the State presented evidence showing that Murphy allegedly engaged in a number of acts of violence and thievery prior to committing the instant offense, including the robbery and kidnapping of Sherryl

Wilhelm and the robbery of Marjorie Ellis.[1] After hearing the evidence, the jury convicted Murphy of capital murder and answered the punishment questions in a manner that required the trial court to sentence Murphy to death. Both the Texas Court of Criminal Appeals (TCCA) and the United States Supreme Court affirmed Murphy's conviction and sentence on direct appeal. *Murphy v. State*, 112 S.W.3d 592 (Tex. Crim. App. 2003); *Murphy v. Texas*, 541 U.S. 940 (2004). Thereafter, Murphy unsuccessfully sought state and federal habeas corpus relief, culminating in the Supreme Court's denial of his petition for certiorari review on February 25, 2019. *Murphy v. Davis*, 139 S. Ct. 1263 (2019).

In February 2023, the State moved the trial court to set Murphy's execution date. A little over a month later, Murphy filed a motion with the trial court, pursuant to Chapter 64 of the Texas Code of Criminal Procedure, seeking to have post-conviction DNA testing performed on a number of items relevant to the punishment phase of his trial, including:

> any and all evidence collected in the Wilhelm/Ellis robberies, including, but not limited to, any receipts, checkbooks, or paperwork recovered in these offenses. This evidence contains biological material that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense.

*Murphy v. State*, 2023 WL 6241994, at *3 (Tex. Crim. App. Sept. 26, 2023).

On April 21, 2023, the trial court held a hearing on both motions. Following the hearing, the trial court denied Murphy's DNA motion, finding that: (1) Murphy's request failed as a matter of law because he sought to test only punishment-related evidence, which Chapter 64 does not provide for, and (2) Murphy failed to show by a preponderance of the evidence that the motion was not filed for purposes of delay. *Id*. The trial court also issued an order setting Murphy's execution date for October 10, 2023.

---

[1] Murphy was not convicted of any crime involving Wilhelm or Ellis.

On appeal, the TCCA affirmed the trial court's denial of DNA testing on September 26, 2023. *Id*. Specifically, the court found Murphy failed to satisfy the requirements set forth by Chapter 64, including Article 64.03(a)(2)(A) (requiring applicant to establish by a preponderance of the evidence he would not have been convicted if exculpatory results had been obtained through DNA testing) and Article 64.03(a)(2)(B) (requiring applicant to establish by a preponderance of the evidence his DNA motion was not made to unreasonably delay the execution of his sentence). *Id*.

## II. Murphy's § 1983 Complaint

On September 26, 2023, Murphy filed a civil-rights action under 42 U.S.C. § 1983 challenging the constitutionality of Texas's post-conviction and DNA testing procedures. Under Article 64.03(a)(2)(A), Murphy cannot obtain post-conviction DNA testing regarding the punishment phase of his trial. But Article 11.071 provides for challenges to the evidence used in the punishment phase of capital trials. Murphy asserts that Article 64.03, as interpreted by the TCCA, violates his procedural due process rights by only allowing DNA testing of evidence that may undermine confidence in the conviction, and not evidence related to the punishment phase of trial. Murphy argues this interpretation effectively precludes him from challenging his sentence of death in a subsequent state habeas corpus application under Article 11.071 § 5(a)(3) of the Texas Code of Criminal Procedure. Murphy also alleges that it deprives him of his rights to clemency, access to courts, and his statutory right to counsel under 18 U.S.C. § 3599. Murphy has asked this Court to stay his upcoming execution date pending a resolution of his civil-rights action.

## III. Analysis

Under 28 U.S.C. § 2251(a)(1), a federal court has inherent discretion when deciding whether to stay an execution. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). However, "a stay of

execution is an equitable remedy, and an inmate is not entitled to a stay of execution as a matter of course." *Hill v. McDonough*, 547 U.S. 573, 583-84 (2006); *Murphy v. Collier*, 919 F.3d 913, 915 (5th Cir. 2019). In deciding whether to stay an execution, a court must consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the public interest lies. *Nken*, 556 U.S. at 425-26. As explained below, these factors support a stay of execution.

Murphy contends that his right to challenge his sentence through a subsequent state habeas application is violated by Chapter 64, which precludes DNA testing of evidence that would only be relevant to the punishment phase of trial. While there is no freestanding constitutional right for a convicted defendant to obtain evidence for post-conviction DNA testing or to challenge a conviction in a subsequent state habeas application, Texas has created such rights. *See* Tex. Code. Crim. Pro. art. 64.03(a)(2)(A);[2] Tex. Code. Crim. Pro. art. 11.071 §5(a)(3).[3] As a result, the state-provided procedures must be adequate to protect the substantive rights provided. *Skinner v. Switzer*, 562 U.S. 521, 525 (2011); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009). If these procedures were "fundamentally inadequate" to protect Murphy's right to seek post-conviction DNA testing and state habeas relief, offending "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," they would be unconstitutional. *Osborne*, 557 U.S. at 69.

---

[2] Article 64.03(a)(1) allows for post-conviction DNA testing of evidence if the state trial court finds: (1) the unaltered evidence is available for testing; (2) identity was an issue in the case; (3) the convicted person establishes by a preponderance of the evidence that he would not have been convicted if DNA testing provided exculpatory results; and (4) the motion is not made to delay the execution of a sentence. *See Emerson v. Thaler*, 544 F. App'x 325, 328 (5th Cir. 2013) (unpublished).

[3] Article 11.071, §5(a)(3) allows a capital inmate to challenge his sentence through a subsequent application by showing that, but for a constitutional violation, no rational juror would have answered one or more of the punishment phase special issues in the State's favor.

4

Murphy has shown the requisite likelihood of success. The merits issues in Murphy's complaint is currently before the Fifth Circuit Court of Appeals, and was the subject of oral argument just over two weeks ago. *See Gutierrez v. Saenz*, No. 21-70009 (5th Cir. 2023). In *Gutierrez*, the United States District Court for the Southern District of Texas issued a declaratory judgment holding that "granting a right to a subsequent habeas proceeding for innocence of the death penalty but then denying DNA testing for a movant to avail himself of that right creates a system which is fundamentally inadequate to vindicate the substantive rights the State of Texas provides." *See Gutierrez v. Saenz, et al.*, No. 1:19-cv-185, Dkt. No. 141 (S.D. Tex. Mar. 23, 2021). Therefore, the district court "conclud[ed] that giving a defendant the right to a successive habeas petition for innocence of the death penalty under Texas Code of Criminal Procedure Article 11.071§5(a)(3) but then denying him DNA testing under Article 64.03(a)(2)(A) unless he can demonstrate innocence of the crime is fundamentally unfair and offends procedural due process." According to the court, denying a movant access to DNA testing of punishment-related evidence renders "illusory" the right to challenge the results of the punishment phase in a subsequent writ pursuant to Article 11.071. *Id*.

In addition to the fact that a sister court has recently issued a declaratory judgment on the very claims before this Court, which are now a live issue before the Fifth Circuit Court of Appeals, the evidence at issue in this writ pertains to what might be regarded as the State's strongest evidence of future dangerousness. As such, it is difficult for the Court to conclude that the negation of this evidence would not have affected the jury's decision in the punishment phase. Therefore, this Court concludes Murphy has made the requisite showing of a likelihood of success. *Nken*, 556 U.S. at 425-26.

Furthermore, in a capital case, the second *Nken* factor—the possibility of irreparable injury—"weighs heavily in the movant's favor." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (per curiam). This is especially true when "his claim has some merit." *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) (quotation omitted). And while the Court is aware of the State's "strong interest in enforcing its criminal judgments without undue interference from the federal courts," *Crutsinger v. Davis,* 930 F.3d 705, 709 (5th Cir. 2019), the Court also believes that the public interest will best be served by allowing time for the fair adjudication of the important issues raised in Murphy's complaint, given the irrevocable harm that would result if this live issue were not first adjudicated by the courts.

Thus, weighing all of these factors, the Court concludes that a stay is warranted in the case to allow the Fifth Circuit adequate time to resolve the unique and serious legal issues raised in both *Gutierrez* and the instant complaint. *See Murphy v. Collier*, 942 F.3d 704, 709 (5th Cir. 2019) (declining to "rush the inquiry" and staying the execution of an inmate "to explore and resolve serious factual concerns[.]").

### IV.  Conclusion and Order

The Court finds that Murphy has met the requirements for a stay of execution. Accordingly, it is therefore **ORDERED** that Murphy's Motion to Stay Execution, filed September 28, 2023 (ECF No. 9), is **GRANTED**. Murphy's execution, scheduled for October 10, 2023, is **STAYED** pending resolution of the underlying civil-rights complaint.

**SIGNED this the 6th day of October, 2023.**

_____
**ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**