FILED
October 09, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ klw
DEPUTY

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 9, 2023
Lyle W. Cayce
Clerk

---

No. 23-70005

---

JEDIDIAH ISAAC MURPHY,

*Plaintiff—Appellee,*

*versus*

ALI MUSTAPHA NASSER,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-1170 RP

---

Before SMITH, SOUTHWICK, and GRAVES, *Circuit Judges.*

LESLIE H. SOUTHWICK: *Circuit Judge*:

Before us is an emergency appeal by the State of Texas seeking to vacate a stay of execution entered by the district court. The issue on which the district court decided to enter a stay is whether the inmate is entitled to have DNA testing performed on certain evidence. The district court granted a stay because similar issues were pending before this court in a case brought by a different Texas prisoner. That related case is fully briefed and has been orally argued, and a decision in the case is pending. We agree with the district court that a stay is appropriate at least until a decision in that case. At that time, this court will order additional briefing.

No. 23-70005

Before we discuss why we leave the stay in place at this time, we need to explain our jurisdiction. The dissent's alternative opinion contains the same analysis, and we restate much of it here. The inmate, Jedidiah Murphy, somewhat surprisingly argues that we do not have jurisdiction to consider whether to leave the stay of execution in place. This circuit and others have said previously that we have jurisdiction to review a stay of execution on interlocutory appeal. Indeed, as defendants remind us, the practice is so commonplace that we have a circuit rule governing it. 5th Cir. R. 8. We discuss here why the practice is commonplace.

The State brought this appeal asserting jurisdiction under 28 U.S.C. § 1292(a)(1). Generally, that section allows appeals from orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing" to enter such orders. *Id.* As our quotation reveals, Section 1292(a)(1) explicitly refers to injunctions. Nonetheless, the Supreme Court stated that it had "not allowed district courts to 'shield [their] orders from appellate review' by avoiding the label 'injunction.'" *Abbott v. Perez*, 138 S. Ct. 2305, 2320 (2018) (quoting *Sampson v. Murray*, 415 U.S. 61, 87 (1974)). That means "where an order has the practical effect of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction." *Id.* at 2319.

To explain, the Court stated that when "an interlocutory injunction is improperly granted or denied, much harm can occur before the final decision in the district court." *Id.* Orders are "effectively injunctions" when they "barred" conduct at issue in the litigation. *Id.* A "stay" is more aptly applied to a court order that "operates upon the judicial proceeding itself, either by halting or postponing some portion of it, or by temporarily divesting an order of enforceability." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Here, the district court order bars Texas officials from carrying out "lawful and important conduct" because it prevents them from performing

No. 23-70005

Murphy's execution. *See Abbott*, 138 S. Ct. at 2319. Moreover, the district court's order does not operate on the judicial proceeding but restricts the actions of specific defendants. That is the function of an injunction. We reject Murphy's arguments that the defendants here, a police chief and prosecutor, are not in a position to cause or stop the execution from being carried out. The purpose and effect of the stay were to stop the execution.

Consequently, we have jurisdiction to review the district court's grant of a stay of execution. We have no cause to believe the district court was seeking to shield his order by calling it a stay, as that court likely recognized our jurisdiction to review. Now, to the request by the State to vacate.

The background is that Jedidiah Murphy was convicted of the 2000 murder of an 80-year-old woman, Bertie Cunningham. After the jury found him to be guilty of the offense, evidence of his future dangerousness was offered at sentencing. Among the evidence was testimony from the victim of another vicious crime who identified Murphy as her attacker. Murphy was not tried for that offense. Murphy is now seeking DNA testing of evidence from that other crime that he argues could exonerate him.

One problem with this request is that the evidence that Murphy wants tested would not prove him innocent of the capital offense. It might undermine the specific testimony relevant to future dangerousness. The Texas Court of Criminal Appeals, including in a recent decision involving Murphy, has made clear that the relevant statute providing for DNA testing "does not authorize testing when exculpatory testing results might affect only the punishment or sentence that [a defendant] received." *Murphy v. State*, 2023 WL 6241994 at * 4 (Tex. Crim. App. Sept. 26, 2023) (quoting *Ex parte Gutierrez*, 337 S.W.3d 883, 901 (Tex. Crim App. 2011). Instead, such evidence can be sought only to show that the inmate would not have been found guilty of the offense. *Id.*

No. 23-70005

Murphy challenges the limitation of testing to evidence affecting guilt. A different district court agreed with a similar argument and declared that Texas must provide testing if a sufficient basis is shown that it would have affected sentencing and not just the finding of guilt. *See Gutierrez v. Saenz*, 565 F. Supp. 3d 892, 911 (S.D. Tex. 2021). A Fifth Circuit panel heard oral argument in that case on September 20, 2023, and a decision on that appeal is pending. *See Gutierrez v. Saenz*, No. 21-70009.

The district court relied on the pendency of a decision in *Gutierrez* as a reason to grant Murphy a stay of execution. *See Murphy v. Jones*, No. A-23-cv-01170-RP, slip op. at 5-6 (W.D. Tex. Oct. 6, 2023). Certainly, that appeal has similar issues that could affect the proper resolution in this case. Waiting for that decision is not required by any general procedural rule or by rules of this court. Nonetheless, in light of the fact that complete briefing and argument has occurred in *Gutierrez*, unlike the emergency-necessitated accelerated consideration here, we conclude we should wait for that decision unless there is some basis to distinguish the present appeal.

A possible distinction concerns Murphy's delay in filing for DNA testing. Nonetheless, delay also is a live issue in *Gutierrez*. Given that delay is a concern in both cases, and both Murphy and Gutierrez make the same constitutional challenge, we will consider all issues regarding the stay after the release of the opinion in *Gutierrez*.

We enter no ruling on the motion to vacate the stay at this time. Therefore, the stay of execution will remain in effect. Once the opinion of this court issues in *Gutierrez*, we will order additional briefing on whether the stay should be vacated.

JUDGE GRAVES concurs in not making a ruling on the motion to vacate the stay at this time. A concurring opinion will be filed.

No. 23-70005

Jerry E. Smith, Circuit Judge, dissenting:

The majority opinion is grave error.  It succumbs to a vapid last-minute attempt to stay an execution that should have occurred decades ago.

In the interest of time, instead of penning a long dissent pointing to the panel majority's and district court's myriad mistakes, I attach the Fifth Circuit panel opinion that should have been issued.

I respectfully dissent.

No. 23-70005

**Attachment to Dissent**

# United States Court of Appeals for the Fifth Circuit

————————

No. 23-70005

————————

JEDIDIAH ISAAC MURPHY,

*Plaintiff—Appellee,*

*versus*

ALI MUSTAPHA NASSER,

*Defendant—Appellant.*

————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-1170

————————————————————

Before SMITH, SOUTHWICK, and GRAVES, *Circuit Judges.*

JERRY E. SMITH, *Circuit Judge.*

Jedidiah Murphy is a prisoner on Texas death row who is scheduled to be executed on October 10, 2023. He has filed two eleventh-hour civil rights complaints under 42 U.S.C. § 1983 in the Western District of Texas, one on October 4, 2023 ("the October complaint"), and the other on September 26, 2023 ("the September complaint"). Each filing was

accompanied by a motion for stay of execution to allow the litigation of these claims (the "September motion" and "October motion" respectively).  The district court denied the October motion but granted the September motion and stayed the execution.  Texas appeals and asks us to vacate the stay.  As of this writing, Murphy has not appealed the denial of the October motion.  For the reasons that follow, the district court abused its discretion in granting the September motion to stay execution because Murphy has failed to demonstrate that he is likely to succeed on the merits of any claim in the September complaint, and no other equitable factors weigh in his favor.

Accordingly, we VACATE the stay of execution in No. 1:23-cv-1170.

## I.

Murphy's journey through the federal and state judicial systems has lasted over twenty years and is well documented in numerous opinions.  *See e.g., Murphy v. Davis*, 901 F.3d 578 (5th Cir. 2018) (denying one of Murphy's federal habeas corpus petitions).  What follows is a brief recitation of the facts and procedural history needed to understand Murphy's current § 1983 actions and motions to stay his execution.

In 2001, a jury convicted Murphy of capital murder, and Texas sought the death penalty.  The jury could not impose the death penalty unless it found that "there [was] a probability that [Murphy] would commit criminal acts of violence that would constitute a continuing threat to society."  Tex. Code Crim. Proc. art. 37.071(b)(1).  One way—among many others— by which Texas attempted to show Murphy's "future dangerousness" was to implicate him in a kidnapping case.  The alleged victim of the kidnapping gave detailed testimony and identified Murphy as the perpetrator.  Murphy attacked the credibility of the alleged victim and the reliability of her testimony, but the jury—after hearing additional evidence of future dangerousness—found that Murphy was a continuing threat to society and

imposed the death penalty.  The Texas Court of Criminal Appeals ("CCA") affirmed on direct appeal.  *See Murphy v. State*, 112 S.W.3d 592 (Tex. Crim. App. 2003).  Thus began a decades-long post-conviction journey.

Murphy first sought state habeas relief based on new evidence that allegedly cast more doubt on the kidnapping victim's identification; that litigation ended in 2012.  Murphy then sought federal habeas relief on numerous grounds; that litigation ended in 2019.  Murphy remained on death row.

On March 24, 2023, Murphy filed a motion for post-conviction forensic DNA testing in state court.  The trial court denied that motion, and the CCA affirmed on September 26, 2023, though Murphy contends that the mandate in that case has not yet issued.  One day later, Murphy filed another state habeas petition accompanied by a motion to withdraw or modify his execution date.  The trial court denied the motion to stay execution, and the CCA affirmed on October 5, 2023.[1]

Concurrently with this flurry of state court activity, Murphy filed two separate civil rights actions in the Western District of Texas under § 1983.  The September complaint was filed on September 26, 2023.  That complaint asserted four violations of Murphy's federal rights.  First, Murphy contended that Texas law has created a right to demonstrate innocence of the death penalty and that the state has violated the federal Constitution's procedural due process protections by denying him access to DNA evidence that he could use to exercise that right.  Second, Murphy posited that the restrictions on his access to DNA evidence unconstitutionally limit his ability to seek executive clemency.  Third, Murphy averred that he has been deprived meaningful access to the courts.  Fourth, and finally, Murphy alleged that

---

[1] We do not know whether the mandate has issued for that decision.

No. 23-70005

18 U.S.C. § 3599(e) preempts the state-law restrictions on access to DNA evidence.

Murphy's October complaint was filed on October 4, 2023.  It alleged four violations of his federal rights.  First, he alleged a violation of his Fourteenth Amendment rights because Texas supposedly intends to execute him via lethal injection with expired drugs that have been damaged.  Second, Murphy alleged that Texas is violating the due process and the equal protection clauses of the U.S. Constitution by violating state pharmaceutical laws concerning the storage of the lethal injection drugs.[2]  Claims three and four of the October complaint mirror the September complaint's allegations regarding deprivation of procedural due process and access to the courts.[3]

Murphy filed motions to stay his execution concurrently with each complaint.  He asked the Western District of Texas to stay his execution to allow adjudication of his pending § 1983 claims.  On October 6, 2023, the district court granted the September motion for stay, finding that Murphy's procedural due process claim challenging Texas's restrictions on DNA evidence was likely to succeed on the merits.  Also on October 6, the district court denied the October motion for stay, holding that all claims asserted in the October complaint were unlikely to be successful.  Texas timely appealed the grant of the September motion.  As of this writing Murphy has not appealed the denial of the October motion.

---

[2] This allegation is confusingly pled.  The above is our own attempt to summarize what Murphy is pleading.

[3] The October complaint includes a fifth "claim," but that claim consists only of broadly worded statements that Murphy's federal constitutional rights are being violated and that the federal courts must accordingly provide a remedy.

No. 23-70005

## II.

"We review a district court's grant of a stay of execution for abuse of discretion." *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012). A "stay of execution is an equitable remedy" and "is not available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "The party requesting a stay bears the burden of showing that the circumstances can justify an exercise of [judicial] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In deciding whether to grant a stay of execution, courts must consider four factors:

> (1) [W]hether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).[4]

## III.

We start, where we always must, with jurisdiction. Defendants contend that we have jurisdiction to review the stay of execution under 28 U.S.C. § 1292(a). Murphy responds that, because the district court entered a stay and not an injunction, the order is not immediately appealable, and we do not have jurisdiction to review it.

As a general matter, "only final decisions of the federal district courts [are] reviewable on appeal." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83

---

[4] Murphy cites *O'Bryan v. Estelle* to contend that we must apply a more lenient standard where we ask only whether he can show "a substantial case on the merits when a serious legal question is involved." 691 F.2d 706, 708 (5th Cir. 1982) (per curiam). But *O'Brian* pre-dated *Nken*, so its standard is inapplicable. *Cf. Diaz v. Stephens*, 731 F.3d 370, 379 (2013) (applying the *Nken* factors when evaluating a motion to stay execution).

No. 23-70005

(1981).  But Congress has created exceptions to this general rule.  One of these exceptions gives courts of appeals jurisdiction over "[i]nterlocutory orders of the district courts" that "grant[], continu[e], modify[], refus[e] or dissolv[e] injunctions."   28 U.S.C. § 1292(a)(1).   Though the text of § 1292(a)(1) refers expressly to injunctions, the Supreme Court has made clear that "district courts [cannot] shield [their] orders from appellate review by avoiding the label 'injunction.'"   *Abbott v. Perez*, 138 S. Ct. 2305, 2320 (2018) (cleaned up). That means "where an order has the practical effect of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction." *Id.* at 2319.

An order has the "practical effect" of an injunction if it would cause "lawful and important conduct [to] be barred." *Id.*  That stands in contrast to stays that "'operate[] upon the judicial proceeding itself,' [but] not on the conduct of a particular actor." *All. For Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *4 (5th Cir. Apr. 12, 2023) (unpublished order) (quoting *Nken*, 556 U.S. at 434).

Altho0ugh the district court used the word "stay" in its opinion, the order undoubtably has the practical effect of an injunction.  The order bars Texas officials from carrying out "lawful and important conduct" because it prevents them from performing Murphy's execution.  *See Perez*, 138 S. Ct. at 2319.   Moreover, the purported "stay" operates not on the judicial proceeding, but to restrict the actions of specific defendants.[5]   That is

---

[5] *Cf. All. For Hippocratic Med. v. Food & Drug Admin.*, 78 F.4th 210, 254 (5th Cir. 2023) ("[U]nlike a preliminary injunction, a stay does not actively prohibit conduct."), *petition for cert. filed* (U.S. Sept. 12, 2013) (No. 23-235), *and petition for cert. filed* (U.S. Sept. 12, 2013) (No. 23-236). Murphy contends that the district court's order was not an injunction because the defendants in this case—the Arlington police chief and the prosecutor—are not among those who could be effectively enjoined from carrying out an execution in Texas.  The question under *Perez*, however, is not whether the order *was* an

No. 23-70005

quintessentially the function of an injunction.  Therefore, as our circuit and others have said previously, we have jurisdiction to review a stay of execution on interlocutory appeal.[6]  Indeed, as defendants aptly point out, the practice is so commonplace that we have a circuit rule governing it.  5TH CIR. R. 8. *See also Adams*, 679 F.3d at 314, 323 (vacating a stay of execution two days after it was issued).  Consequently, we have jurisdiction to review the district court's stay of execution.

## IV.

We start with the September complaint, because the district court granted a stay of execution to allow Murphy to litigate the procedural due process claims raised in this complaint.  Murphy contends that Chapter 64 of the Texas Code of Criminal Procedure is facially unconstitutional.  He claims the State of Texas unconstitutionally violated his state-created right to challenge his death penalty conviction using DNA evidence.  As we explain below, the district court abused its discretion in finding that Murphy's procedural due process claim is likely to succeed on the merits.

Texas grants convicted defendants the right to seek relief through "a subsequent application for a writ of habeas corpus" upon a showing of "sufficient specific facts establishing . . . by clear and convincing evidence [that], but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071,

---

injunction, but whether it had the *practical effect* of an injunction.  The order was a stay, but since that stay had the practical effect of an injunction, we have jurisdiction to review it.

[6] *Cf. Cooey v. Strickland*, 588 F.3d 921, 922–23 (6th Cir. 2009) (holding that a stay of execution had the "practical effect" of an injunction); *Howard v. Dretke*, 157 F. App'x 667, 670 (5th Cir. 2005) (same); *Mines v. Dretke*, 118 F. App'x 806, 812 n.27 (5th Cir. 2007) (same).

No. 23-70005

37.0711, or 37.072." Tex. Code Crim. Proc. art. 11.071 § 5(a)(3).

One way a defendant may satisfy Article 11.071's requirements is with the use of DNA testing evidence. While there is no freestanding right for a convicted defendant to obtain evidence for post-conviction DNA testing, *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 72 (2009), states may create such a right. And that is the case for Texas. Under Chapter 64 of the Texas Code of Criminal Procedure, a defendant may move for post-conviction DNA testing of evidence. Tex. Code Crim. Proc. art. 64.01. To do so, Chapter 64 requires a "convicted person [to] establish[] by a preponderance of the evidence that ... the person would not have been convicted if the exculpatory results had been obtained through DNA testing." *Id.* art. 64.03(a)(2)(A).

By creating a right to obtain evidence for post-conviction DNA testing, Texas must provide convicted defendants with adequate procedures to vindicate that right. *Osborne*, 557 U.S. at 72–74. Given that a defendant has "already been found guilty at a fair trial," he "has only a limited interest in postconviction relief." *Id.* at 69. So "'when a state chooses to offer help to those seeking relief from convictions,' due process does not 'dictate the exact form such assistance must assume.'" *Id.* (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 559 (1987)) (cleaned up). Texas's procedures for postconviction relief do not violate due process rights if the procedure it offers does not "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgress[] any recognized principle of fundamental fairness in operation." *Id.* (internal quotations omitted).

Murphy asserts Chapter 64 facially violates defendants' procedural due process rights. Specifically, he theorizes that Article 11.07 section 5(a)(3) is rendered illusory because Chapter 64 bars the use of DNA testing to

No. 23-70005

demonstrate a defendant is innocent of the death penalty.  The district court determined that claim is likely to succeed on the merits because a district court in the Southern District of Texas had ruled in a prisoner's favor on a similar issue and that case is currently on appeal with our court.  That conclusion was an abuse of discretion for three reasons:

*First*, Murphy's procedural due process claim falters at the starting line because he fails to make the necessary showing successfully to mount a facial challenge to the statute.  To prevail on a facial challenge, a challenger "must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Thus, Murphy must demonstrate that Article 11.071 § 5(a)(3) does not allow any criminal defendant to show he or she is innocent of the death penalty.  Murphy cannot meet this burden.  The CCA regularly considers—and grants merits review of—applications under Article 11.071 in which a defendant claims he is ineligible for the death penalty.[7]  Indeed, Murphy's *own* subsequent habeas petitions fatally wound his instant facial challenge:  By raising ineffective assistance of trial counsel, false testimony, suppression of exculpatory evidence, and Eighth Amendment claims under Article 11.071 § 5(a)(3), he has affirmatively demonstrated that section 5(a)(3) provides ample avenues for defendants to show they are innocent of the death penalty.  Consequently, Murphy's facial challenge fails as a matter of law.

*Second*, Murphy fails to meet his burden to establish that Article 11.071 creates a substantive right to challenge a death penalty conviction with evidence that might persuade a jury to decline to impose the death penalty.  Murphy asserts Article 11.071 codifies "the doctrine found in *Sawyer v.*

---

[7] *See, e.g., Ex parte Milam*, No. WR-79,322-04, 2021 WL 197088, at *1 (Tex. Crim. App. Jan. 15, 2021) (per curiam); *Ex parte Weathers*, No. WR-64,302-02, 2012 WL 1378105, at *1 (Tex. Crim. App. Apr. 18, 2012) (per curiam).

No. 23-70005

*Whitley*."[8]  But *Ex parte Blue*—the very case Murphy cites—contradicts his assertion:  There, the CCA expressly declined to interpret Article 11.071 unequivocally to incorporate *Sawyer* in all its particulars.[9]

Regardless, assuming *arguendo* that Article 11.071 fully codifies *Sawyer* still does Murphy's claim no good.  "Evidence that might have persuaded the jury to decline to impose the death penalty is irrelevant under *Sawyer*" because it "has no bearing on [a criminal defendant's] claim of actual innocence of the death penalty."  *Rocha v. Thaler*, 626 F.3d 815, 825–26 (5th Cir. 2010).  Murphy seeks to use DNA evidence solely for the purpose of showing that he did not commit an extraneous offense the state presented in support of the future-dangerousness special issue.  But that claim—even if supported by the DNA evidence—would not have changed Murphy's eligibility for the death penalty; at best, it would only make the death penalty a *less suitable* punishment.

The state presented multiple independent pieces of aggravating evidence from which the jury found a probability that Murphy would be a future danger.  That aggregating evidence includes Murphy's record of theft convictions, testimony about a domestic-abuse call involving him and his girlfriend, a witness who testified that he pulled a gun on her at a high school party, testimony from one of his former coworkers, the results of his Minnesota Multiphasic Personality Inventory-II test, and his murder of

---

[8] The Court in *Sawyer* defined the term "innocent of the death penalty" to include both "innocence of the capital crime itself" and "a showing that there was no aggravating circumstance or that some other condition of eligibility had not been met."  505 U.S. 333, 345 (1992).

[9] *Ex parte Blue*, 230 S.W.3d at 160 n.42 ("We hesitate to declare that Article 11.071, Section 5(a)(3) wholly codifies the Supreme Court's doctrine of 'actual innocence of the death penalty,' even inasmuch as it has tied the exception to the bar on subsequent writs to the statutory criteria for the death penalty under Article 37.071.").

eighty-year-old Bertie Cunningham.[10]   Thus, even under his erroneous interpretation of Article 11.071, Murphy still fails to show the DNA testing he seeks would make him innocent of the death penalty.[11]

*Third*, Murphy misapplies Chapter 64 to Article 11.071.  His claim—that Chapter 64 precludes him from challenging his death sentence by denying the DNA testing he seeks—is belied by the text and structure of the statute.  Chapter 64 allows a convicted person to "submit to the convicting court a motion for forensic DNA testing of evidence," TEX. CODE CRIM. PROC. art. 64.01, which would, in turn, allow the convicting court to "order forensic DNA testing" provided certain statutory conditions are met, *id.* art. 64.03(a).

The statute thus creates an additional mechanism by which a defendant can obtain potentially exculpatory DNA test results.  DNA testing results obtained through Chapter 64 *could* be used as part of a defendant's Article 11.071 application to show there are "sufficient specific facts establishing that . . . by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072."   *Id.* art. 11.071 § 5(a)(3).

But Article 11.071 certainly doesn't require that DNA test results come exclusively from a defendant's Chapter 64 motion.  Section 5(a)

---

[10] *Davis*, 901 F.3d at 583, 585; *see also Guevara v. State*, 97 S.W.3d 579, 581 (Tex. Crim. App. 2003) (noting that "[t]he facts of the crime alone can be sufficient to support the affirmative finding to the future dangerousness special issue").

[11] *See Rocha*, 626 F.3d at 825 ("The quality of the mitigation evidence the petitioner would have introduced at sentencing has no bearing on his claim of actual innocence of the death penalty.").

requires that a subsequent habeas application "contain[] sufficient specific facts," and that neither favors nor disfavors Chapter 64 DNA test results over DNA test results obtained through other means.  In sum, Chapter 64— contrary to Murphy's assertion—*expands* the available sources of evidence convicted defendants may use in their subsequent habeas petitions. Consequently, Murphy has failed to identify any facial constitutional infirmity.

The district court ignored all this authority and instead relied solely on *Gutierrez v. Saenz*, 565 F. Supp. 3d 892 (S.D. Tex. 2021).  The court in *Gutierrez* first observed that Article 11.071 "grants the substantive right to file a second habeas petition with a clear and convincing showing of innocence of the death penalty." *Id.* at 910.  It then found that "Chapter 64 denies the petitioner access to DNA evidence by which a person can avail himself of that right" and violates a petitioner's procedural due process rights. *Id.* at 910–11.

The district court abused its discretion in relying exclusively on *Gutierrez*.  That case cites *Rocha* for the proposition that the CCA construed "Article 11.071 . . . to mean that petitioners must make a threshold showing that the applicant is actually innocent of the death penalty." *Id.*  But *Rocha* obligates us "to construe and apply section 5(a)(3) as the [CCA] construes and applies it." 626 F.3d at 822.  *Gutierrez* disregards that command; it fails to cite any case in which the CCA has held that Article 11.071 creates a substantive right to challenge a death penalty conviction with evidence that might persuade a jury to decline to impose the death penalty.  Thus, the district court could not have relied on Gutierrez's reasoning to conclude that Murphy had met his burden of showing a cognizable liberty or property interest—as is necessary for a procedural due process claim.  *See Richardson v. Hughs*, 978 F.3d 220, 229 (5th Cir. 2020).

No. 23-70005

Furthermore, the defendant in *Gutierrez* sought DNA evidence under Chapter 64 to demonstrate innocence of the death penalty by casting doubt on whether he had committed the underlying crime for which he was convicted.[12] He wanted DNA evidence to show that he was not in the home of the victim at the time of the murder.  That means the DNA evidence sought in *Gutierrez* would provide evidence directly relevant to the degree of culpability of the crime for which he was being sentenced.  Here, in contrast, Murphy seeks DNA evidence not to challenge his guilt of the underlying crime, but to show that he did not commit an extraneous offense the state presented in support of the future-dangerousness special issue.

That factual distinction makes all the difference: As we explained above, "[e]vidence that might have persuaded the jury to decline to impose the death penalty . . . has no bearing on [a criminal defendant's] claim of actual innocence of the death penalty." *Rocha*, 626 F.3d at 825–26. Therefore, even if *Gutierrez* was correctly decided, it is not applicable to Murphy's situation because Murphy is not attempting to demonstrate innocence of the death penalty by attacking his underlying conviction. Rather, the DNA evidence he seeks is relevant to the special issue on future dangerousness, which encompasses a much broader category of potential evidence.

Despite *Gutierrez*'s non-binding nature as an opinion from a district court, and further despite its questionable reasoning and inapplicability to our facts, the district court *à quo* used *Gutierrez* to conclude that Murphy has shown a likelihood of success on the merits because the issue Murphy seeks

---

[12] *See Ex parte Gutierrez*, 337 S.W.3d 883, 888 (Tex. Crim. App. 2011) (noting Gutierrez's argument that "exculpatory DNA test results . . . would show, by a preponderance of the evidence, that he would not have been convicted of capital murder.").

No. 23-70005

a stay of execution to litigate is now on appeal before our court. Rank speculation about the potential outcome of a case pending appeal does not support the district court's finding of a likelihood of success on the merits.[13] The district court abused its discretion by relying on the fact that *Gutierrez* is pending on appeal to grant a stay of execution.

Even if our precedent allowed the district court to rely on a pending appeal, the unique procedural history of *Gutierrez* counsels strongly against doing so in this case. In 2020, Gutierrez sought a stay of execution so he could litigate "the constitutionality of Chapter 64 of the Texas Code of Criminal Procedure" and Texas's "policy refusing to allow chaplains to accompany inmates into the execution chamber itself." *Gutierrez v. Saenz*, 818 Fed. App'x 309, 311 (5th Cir. 2020). The district court granted a stay of execution, but our court reversed. *Id.* at 313. We rejected Gutierrez's facial and as-applied procedural due process challenges to Chapter 64 as well as his spiritual-advisor claim. *Id.* at 312. The Supreme Court then granted certiorari, vacated, and remanded for further consideration of the spiritual-advisor claim. *See Gutierrez v. Saenz*, 141 S. Ct. 1260, 1260 (2021).

On remand, *Gutierrez* again challenged Chapter 64, and the district court again ruled in his favor. *Gutierrez*, 565 F. Supp. 3d at 908. The *Gutierrez* district court distinguished our earlier reasoning on the sole basis that Gutierrez's new Chapter 64 claim was "legally distinct" from the one we had rejected because the new claim challenged Chapter 64's denial of

---

[13] *Cf. Wicker v. McCotter,* 798 F.2d 155, 158 (5th Cir. 1986) ("In the absence of a declaration by the [higher court] that the executions should be stayed in cases presenting the issue raised by [Murphy], we must follow our circuit's precedents and deny . . . a stay of execution on this issue."); *Moreno v. Collins*, No. 94-50026, 1994 U.S. App. LEXIS 41477, at *3 (5th Cir. Jan. 17, 1994) (per curiam) ("[T]he grant of certiorari by the United States Supreme Court to review an issue settled in this circuit does not itself require a stay of execution.").

evidence "that would demonstrate he is innocent of the death penalty," whereas the claim we had ruled on previously challenged Chapter 64's denial of evidence that would "demonstrate innocence of capital murder." *See id.*

We do not, and cannot, know how our court will ultimately resolve *Gutierrez*. But the difference between Gutierrez's rejected Chapter 64 claim and his current one is so small that it cannot be fairly said that the pending appeal gives Murphy a likelihood of success in this case.

Finally, the district court also determined that the possibility of irreparable harm weighs heavily in Murphy's favor. It is true that this factor typically favors the movant in a capital case. *See O'Bryan*, 691 F.2d at 708. However, the procedural posture of this case is unique. The CCA denied Murphy's request for DNA testing both because Chapter 64 bars it as a matter of law and because Murphy had unreasonably delayed in requesting DNA testing. *See Murphy v. State*, No. AP-77,112, 2023 WL 6241994, at *4–5 (Tex. Crim. App. Sept. 26, 2023). This second holding is crucial because, even if the application of Chapter 64 violates Murphy's procedural due process rights, he still would not be entitled to the DNA testing he seeks under the state court's alternative holding of unreasonable delay.

Therefore, the district court erred in concluding that Murphy would suffer irreparable harm in not being able to pursue his procedural due process claims. Rather, the balance of equities weighs against granting Murphy's motion for stay of execution: Both the state and victims of crime have a "powerful and legitimate interest in punishing the guilty." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (internal quotations omitted). And "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (internal quotations omitted). Even apart from the likelihood-of-success inquiry, the district court abused its discretion in

No. 23-70005

concluding the balance of equities weighs in favor of granting Murphy's motion for stay of execution.

## V.

It does not appear that the district court relied on any other claim in Murphy's September complaint when granting the stay of execution. To the extent that it did, it abused its discretion because none of Murphy's other claims is likely to succeed.

First, Murphy contends Chapter 64 unconstitutionally limits his ability to seek executive clemency.  Problematically for him, Murphy's claim is premised on his assumption that Chapter 64 facially violates defendants' procedural due process rights under Article 11.071.  But as we have already explained, that assumption holds no water.  If anything, Chapter 64 makes it *easier* for convicted defendants to seek executive clemency since it *expands* the avenues by which a defendant may obtain DNA test results. Furthermore, Murphy fails to cite any case in which the denial of DNA testing violated a defendant's procedural due process right to present a clemency claim.[14]  Murphy has therefore failed to bear his burden of proving that any procedural due process violation exists.[15]

Next, Murphy contends the denial of DNA testing deprives him of his right to adequate, effective, and meaningful access to the courts.  That contention lacks merit.  The right of access to the courts does not include the

---

[14] Nor is there a substantive due process right to executive clemency.  *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981).

[15] *See Richardson*, 978 F.3d at 229 (noting plaintiff bears the burden of establishing a cognizable liberty or property interest to state a procedural due process claim).

No. 23-70005

ability "to *discover* grievances[] and to *litigate effectively* once in court."[16] Murphy seeks to compel the state to provide DNA testing on the mere hope that its results would support some speculative and hypothetical claim in the future. That is nothing more than an attempt "to discover grievances." *Casey*, 518 U.S. at 354 (emphasis removed).

A request for DNA testing, by itself, does not tend to prove or disprove Murphy's claim that he is innocent of the death penalty. The DNA testing "may prove exculpatory, inculpatory, or inconclusive. In no event will a judgment that simply orders DNA tests necessarily impl[y] the unlawfulness of the State's custody." *Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (internal quotations omitted). As a result, Murphy fails to show he has been denied his right of access to the courts.

Finally, Murphy contends 18 U.S.C. § 3599(e) entitles him to representation through all available post-conviction process, including applications for stays of execution and clemency proceedings. There is no merit to Murphy's final theory. That statute "authorizes federal courts to provide funding to a party who is facing the prospect of a death sentence and is 'financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services.'" *Ayestas v. Davis*, 138 S. Ct. 1080, 1092 (2018) (quoting 18 U.S.C. § 3599(a)(1)). It is merely a funding law and "not a law that grants federal courts authority to oversee the scope and nature of federally funded legal representation." *Beatty v. Lumpkin*, 52 F.4th 632, 634 (5th Cir.) (per curiam), *cert. denied*, 143 S. Ct. 416 (2022).

For these reasons, Murphy has failed to show a likelihood of success

---

[16] *Lewis v. Casey*, 518 U.S. 343, 354 (1996); *see Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013) (per curiam) ("One is not entitled to access the courts merely to argue that there might be some remote possibility of some constitutional violation.").

No. 23-70005

on the merits on any claim in his September complaint. To the extent the district court relied on any claim other that the Chapter 64 challenge in granting the September motion to stay, it abused its discretion.

\* \* \* \* \*

Accordingly, the district court abused its discretion in granting Murphy's September motion to stay execution. Accordingly, we VACATE the stay of execution entered in No. 1:23-cv-1170. The mandate shall issue forthwith.

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

October 09, 2023

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

     No. 23-70005   Murphy v. Nasser USDC
                  No. 1:23-CV-1170  RP

Enclosed is the opinion entered in the case captioned above.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Monica R. Washington, Deputy Clerk
                        504-310-7705

Ms. Catherine Clare Bernhard
Ms. Katherine Froyen Black
Mr. Philip Devlin
Mr. Russell David Hunt Jr.
Mr. Ali Mustapha Nasser