MODIFIED 10/10/2023

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 9, 2023

Lyle W. Cayce
Clerk

_____

No. 23-70005

_____

Jedidiah Isaac Murphy,

*Plaintiff—Appellee*,

*versus*

Ali Mustapha Nasser,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-1170

_____

Before Smith, Southwick, and Graves, *Circuit Judges*.

Leslie H. Southwick: *Circuit Judge*:

Before us is an emergency appeal by the State of Texas seeking to vacate a stay of execution entered by the district court. The issue on which the district court decided to enter a stay is whether the inmate is entitled to have DNA testing performed on certain evidence. The district court granted a stay because similar issues were pending before this court in a case brought by a different Texas prisoner. That related case is fully briefed and has been orally argued, and a decision in the case is pending. We agree with the district

court that a stay is appropriate at least until a decision in that case. At that time, this court will order additional briefing.

Before we discuss why we leave the stay in place at this time, we need to explain our jurisdiction. The dissent's alternative opinion contains the same analysis, and we restate much of it here. The inmate, Jedidiah Murphy, somewhat surprisingly argues that we do not have jurisdiction to consider whether to leave the stay of execution in place. This circuit and others have said previously that we have jurisdiction to review a stay of execution on interlocutory appeal. Indeed, as defendants remind us, the practice is so commonplace that we have a circuit rule governing it. 5th Cir. R. 8. We discuss here why the practice is commonplace.

The State brought this appeal asserting jurisdiction under 28 U.S.C. § 1292(a)(1). Generally, that section allows appeals from orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing" to enter such orders. *Id.* As our quotation reveals, Section 1292(a)(1) explicitly refers to injunctions. Nonetheless, the Supreme Court stated that it had "not allowed district courts to 'shield [their] orders from appellate review' by avoiding the label 'injunction.'" *Abbott v. Perez*, 138 S. Ct. 2305, 2320 (2018) (quoting *Sampson v. Murray*, 415 U.S. 61, 87 (1974)). That means "where an order has the practical effect of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction." *Id.* at 2319.

To explain, the Court stated that when "an interlocutory injunction is improperly granted or denied, much harm can occur before the final decision in the district court." *Id.* Orders are "effectively injunctions" when they "barred" conduct at issue in the litigation. *Id.* A "stay" is more aptly applied to a court order that "operates upon the judicial proceeding itself, either by halting or postponing some portion of it, or by temporarily divesting an order of enforceability." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Here, the district court order bars Texas officials from carrying out "lawful and important conduct" because it prevents them from performing Murphy's execution. *See Abbott*, 138 S. Ct. at 2319. Moreover, the district court's order does not operate on the judicial proceeding but restricts the actions of specific defendants. That is the function of an injunction. We reject Murphy's arguments that the defendants here, a police chief and prosecutor, are not in a position to cause or stop the execution from being carried out. The purpose and effect of the stay were to stop the execution.

Consequently, we have jurisdiction to review the district court's grant of a stay of execution. We have no cause to believe the district court was seeking to shield his order by calling it a stay, as that court likely recognized our jurisdiction to review. Now, to the request by the State to vacate.

The background is that Jedidiah Murphy was convicted of the 2000 murder of an 80-year-old woman, Bertie Cunningham. After the jury found him to be guilty of the offense, evidence of his future dangerousness was offered at sentencing. Among the evidence was testimony from the victim of another vicious crime who identified Murphy as her attacker. Murphy was not tried for that offense. Murphy is now seeking DNA testing of evidence from that other crime that he argues could exonerate him.

One problem with this request is that the evidence that Murphy wants tested would not prove him innocent of the capital offense. It might undermine the specific testimony relevant to future dangerousness. The Texas Court of Criminal Appeals, including in a recent decision involving Murphy, has made clear that the relevant statute providing for DNA testing "does not authorize testing when exculpatory testing results might affect only the punishment or sentence that [a defendant] received." *Murphy v. State*, 2023 WL 6241994 at * 4 (Tex. Crim. App. Sept. 26, 2023) (quoting *Ex parte Gutierrez*, 337 S.W.3d 883, 901 (Tex. Crim App. 2011). Instead, such

evidence can be sought only to show that the inmate would not have been found guilty of the offense. *Id.*

Murphy challenges the limitation of testing to evidence affecting guilt. A different district court agreed with a similar argument and declared that Texas must provide testing if a sufficient basis is shown that it would have affected sentencing and not just the finding of guilt. *See Gutierrez v. Saenz*, 565 F. Supp. 3d 892, 911 (S.D. Tex. 2021). A Fifth Circuit panel heard oral argument in that case on September 20, 2023, and a decision on that appeal is pending. *See Gutierrez v. Saenz*, No. 21-70009.

The district court relied on the pendency of a decision in *Gutierrez* as a reason to grant Murphy a stay of execution. *See Murphy v. Jones*, No. A-23-cv-01170-RP, slip op. at 5-6 (W.D. Tex. Oct. 6, 2023). Certainly, that appeal has similar issues that could affect the proper resolution in this case. Waiting for that decision is not required by any general procedural rule or by rules of this court. Nonetheless, in light of the fact that complete briefing and argument has occurred in *Gutierrez*, unlike the emergency-necessitated accelerated consideration here, we conclude we should wait for that decision unless there is some basis to distinguish the present appeal.

A possible distinction concerns Murphy's delay in filing for DNA testing. Nonetheless, delay also is a live issue in *Gutierrez*. Given that delay is a concern in both cases, and both Murphy and Gutierrez make the same constitutional challenge, we will consider all issues regarding the stay after the release of the opinion in *Gutierrez*.

We enter no ruling on the motion to vacate the stay at this time. Therefore, the stay of execution will remain in effect. Once the opinion of this court issues in *Gutierrez*, we will order additional briefing on whether the stay should be vacated.

No. 23-70005

Judge Graves concurs in not making a ruling on the motion to vacate the stay at this time.

No. 23-70005

James E. Graves, Jr., *Circuit Judge*, specially concurring:

I agree that the stay should remain in effect pending this court's decision in *Gutierrez v. Saenz*, No. 21-70009, and additional briefing. However, I write separately to provide more explanation for my position and to briefly address portions of the dissenting opinion, which includes an attachment of a proposed majority opinion drafted by Judge Smith. I did not join that proposed opinion, in part, because the district court did not abuse its discretion in granting a stay of execution with regard to the DNA testing, and for various other reasons, including those discussed herein.

Jedidiah Murphy went to trial for capital murder in 2001. Under Texas law, jurors in a capital murder trial in which the state seeks the death penalty must determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc., art. 37.071, § 2(b)(1). During the punishment phase, the prosecution presented evidence allegedly showing that Murphy committed acts of violence in committing other offenses, including the robbery and kidnapping of Sherryl Wilhelm and the robbery of Marjorie Ellis.[1] After hearing the evidence, the jury convicted Murphy and answered the punishment questions in the affirmative, requiring the trial court to sentence Murphy to death. The Texas Court of Criminal Appeals (TCCA) affirmed on direct appeal. *See Murphy v. State*, 112 S.W.3d 592 (Tex. Crim. App. 2003) (*Murphy I*).

Relevant here, on March 24, 2023, Murphy filed a motion for DNA testing of the "evidence collected in the Wilhelm/Ellis robberies" in state

---

[1] Contrary to the majority's statement that the DNA evidence pertained to only one other offense, property belonging to Ellis was found in Wilhelm's abandoned car. *See Murphy v. State*, No. AP-77,112, 2023 WL 6241994, *1 (Tex. Crim. App. Sept. 26, 2023) (*Murphy II*).

court that he argued could be exculpatory and undermine the specific testimony relevant to future dangerousness.[2] *See Murphy II*, 2023 WL 6241994, *3. The trial court denied the motion, finding that Murphy's "request fails as a matter of law because he seeks to test only punishment-related evidence." *Id*. On appeal, Murphy asserted that the exclusion of punishment-related evidence from Chapter 64 DNA testing should be reexamined under the 2003 statutory amendments to Chapter 64. The amendments to Article 64.03(a)(2)(A) deleted a requirement that the defendant show he would not have been "prosecuted" under the exculpatory evidence. The TCCA disagreed and affirmed the trial court on September 26, 2023.

That same day, Murphy filed a complaint in the district court under 42 U.S.C. § 1983. Murphy asserted, in applicable part, that Article 64.03, as interpreted by the TCCA, violated his procedural due process rights by only allowing DNA testing of evidence relevant to conviction and not evidence pertaining to the punishment phase of trial. Murphy also argued that his right to challenge his sentence of death through a subsequent habeas petition was violated by Chapter 64, and he sought a stay of execution. The district court granted the stay, finding that Murphy had shown the requisite likelihood of success on the merits, the possibility of irreparable harm weighed heavily in Murphy's favor, and the public interest would be best served by allowing time for the fair adjudication of these important issues. The district court also took into account that this court is presently considering *Gutierrez*. Texas appealed, asking this court to vacate the stay. A majority of the panel declined to do so, as discussed herein.

---

[2] This was after the state moved to set an execution date but prior to the setting of the date of execution.

No. 23-70005

This court reviews a district court's grant of a stay of execution under an abuse of discretion. *See Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012). The factors a court must consider in deciding whether to grant a stay of execution require Murphy to demonstrate: (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury outweighs any harm that will result if the stay is granted; and (4) that the stay will not disserve the public interest. *See Murphy v. Collier*, 919 F.3d 913, 915 (5th Cir. 2019); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors are the most critical. *See Crutsinger v. Davis*, 930 F.3d 705, 707 (5th Cir. 2019).

The dissent states that the district court abused its discretion in finding that Murphy is likely to succeed on the merits of his claim. I disagree.

Murphy asserts a facial challenge to Texas' postconviction DNA testing procedures, asserting that Texas unconstitutionally violated his state-created right to challenge his death penalty conviction using DNA evidence. As the dissent concedes, Murphy would be able to satisfy the requirements through DNA Testing. *See* Tex. Code Crim. Proc. art. 64.01, art. 64.03(a)(2)(A). However, the TCCA interprets Article 64.03 to only allow the DNA testing of evidence relevant to Murphy's conviction, and not evidence pertaining to the punishment phase. Thus, Murphy asserts that the TCCA wrongfully barred him from using DNA testing to demonstrate that he is innocent of the death penalty.

The dissent acknowledges that because Texas creates a right to obtain evidence for post-conviction DNA testing, it must provide defendants with adequate procedures to vindicate that right. *See Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 72-74 (2009). However, the dissent then concludes that Murphy fails to make the necessary showing to successfully mount a facial challenge to the statute because he is unable to "'establish that

8

no set of circumstances exists under which the Act would be valid.' *United States v. Salerno*, 481 U.S. 739, 745 (1987)." The dissent interprets this to mean that "Murphy must demonstrate that Article 11.071 section 5(a)(3) does not allow any criminal defendant to show he or she is innocent of the death penalty." The dissent further states that Murphy cannot meet his burden because "Texas' Court of Criminal Appeals  regularly considers— and grants merits review of—applications under Article 11.071 in which a criminal defendant claims he or she is ineligible for the death penalty." The dissent cites  *Ex parte Milam*, No. WR-79,322-04, 2021 WL 197088, at *1 (Tex. Crim. App. Jan. 15, 2021) (per curiam), and *Ex parte Weathers*, No. WR-64,302-02, 2012 WL 1378105, at *1 (Tex. Crim. App. Apr. 18, 2012) (per curiam) in support. The dissent then states that Murphy's own habeas petitions, by virtue of raising ineffective assistance of counsel and other claims, "affirmatively demonstrated that section 5(a)(3) provides ample avenues for criminal defendants to show that they are innocent of the death penalty."

Murphy is challenging Article 64.03, but the dissent is erroneously analyzing Article 11.071. Murphy's facial challenge is to the post-conviction DNA testing provision of Chapter 64, not the habeas procedure in a death penalty case of Chapter 11. The proper inquiry is not whether Article 11.071 § 5(a)(3) does not allow any criminal defendant to show he is innocent of the death penalty, as the dissent states. The proper inquiry is whether any set of circumstances exist that would allow the use of post-conviction DNA testing on evidence used only for purposes of punishment or sentencing.

The dissent also conflates simply being allowed to raise a claim with somehow being the equivalent of successfully establishing ineligibility for the death penalty. Further, the Supreme Court has said, "[i]n determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about hypothetical or imaginary

cases." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-50 (2008) (internal marks and citation omitted); *see also Freedom Path, Inc. v. Internal Revenue Service*, 913 F.3d 503, 508 (5th Cir. 2019) ("We agree that a facial challenge to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual.") (internal marks and citation omitted).

Additionally, neither *Milam*, 2021 WL 197088, nor *Weathers*, 2012 WL 1378105, which both considered habeas claims involving intellectual disability, offer support for the dissent's erroneous characterization of the issue and standard. Moreover, in recent cases, this court has analyzed facial challenges without determining whether any set of circumstances exists under which the challenged act would be valid. *See United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023); *see also National Horsemen's Benevolent and Protective Association v. Black*, 53 F.4th 869 (5th Cir. 2022).

The dissent next concludes that "Murphy fails to meet his burden to establish that Article 11.071 creates a substantive right to challenge a death penalty conviction with evidence that might persuade a jury to decline to impose the death penalty." In doing so, the dissent disputes Murphy's argument that Article 11.071 codifies language in *Sawyer v. Whitley*, 505 U.S. 333 (1992), where the Supreme Court said that "[s]ensible meaning is given to the term innocent of the death penalty by allowing a showing in addition to innocence of the capital crime itself a showing that there was no aggravating circumstance or that some other condition of eligibility had not been met." 505 U.S. at 345. While acknowledging this definition, the dissent cites *Ex parte Blue*, 230 S.W.3d at 160 n.42, for the proposition that the TCCA "expressly declined to interpret Article 11.071 unequivocally to incorporate Sawyer in all its particulars." But that is taken out of context. What the TCCA actually said, was that:

No. 23-70005

> Section 5(a)(3) of Article 11.071 represents the Legislature's attempt to codify something very much like this federal doctrine of "actual innocence of the death penalty" for purposes of subsequent state writs. By tying the exception to the general prohibition on subsequent state writs specifically to the statutory special issues in Article 37.071 of the Code of Criminal Procedure, the Legislature apparently intended to codify, more or less, the doctrine found in *Sawyer v. Whitley*. This reading of the exception seems to limit its applicability to constitutional errors that affect the applicant's eligibility for the death penalty under state statutory law.

*Blue*, 230 S.W.3d at 160-61. Additionally, in footnote 42, the TCCA stated the portion quoted by the dissent in footnote 9 and then continued on to identify the portion of the federal doctrine of actual innocence in *Sawyer* that it was hesitant to codify as being "the so-called 'mitigation' special issue, embodied in Article 37.071, Section 2(e)." *Id.* at 161, n. 42. The court further explained that doing so would "permit a subsequent state habeas applicant to proceed under circumstances that would not excuse a federal petitioner under *Sawyer v. Whitley*. We need express no ultimate opinion on this question here." *Id.* The mitigation special issue is inapplicable to Murphy.

In the alternative, the dissent says that, even if Article 11.071 fully codifies *Sawyer*, Murphy's claim still fails under *Rocha v. Taylor*, 626 F.3d 815, 825-26 (5th Cir. 2010). However, again, the portion of *Rocha* that the dissent relies on pertains only to the mitigation special issue, as discussed above. The *Rocha* court said, "[t]he quality of the mitigation evidence the petitioner would have introduced at sentencing has no bearing on his claim of actual innocence of the death penalty. Evidence that might have persuaded the jury to decline to impose the death penalty is irrelevant under *Sawyer*." *Id.*

No. 23-70005

The dissent next concludes that Murphy misapplies Chapter 64 to Article 11.071 because his claim is belied by the text and structure of Article 64.01.   The dissent's discussion on this relies on various erroneous statements discussed herein and, thus, fares no better.

No. 23-70005

Jerry E. Smith, Circuit Judge, dissenting:

The majority opinion is grave error. It succumbs to a vapid last-minute attempt to stay an execution that should have occurred decades ago.

In the interest of time, instead of penning a long dissent pointing to the panel majority's and district court's myriad mistakes, I attach the Fifth Circuit panel opinion that should have been issued.

I respectfully dissent.

No. 23-70005
**Attachment to Dissent**

# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 23-70005

———————————

Jedidiah Isaac Murphy,

*Plaintiff—Appellee,*

*versus*

Ali Mustapha Nasser,

*Defendant—Appellant.*

———————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-1170

———————————————————

No. 23-70005

Before Smith, Southwick, and Graves, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*.

Jedidiah Murphy is a prisoner on Texas death row who is scheduled to be executed on October 10, 2023. He has filed two eleventh-hour civil rights complaints under 42 U.S.C. § 1983 in the Western District of Texas, one on October 4, 2023 ("the October complaint"), and the other on September 26, 2023 ("the September complaint"). Each filing was accompanied by a motion for stay of execution to allow the litigation of these claims (the "September motion" and "October motion" respectively). The district court denied the October motion but granted the September motion and stayed the execution. Texas appeals and asks us to vacate the stay. As of this writing, Murphy has not appealed the denial of the October motion. For the reasons that follow, the district court abused its discretion in granting the September motion to stay execution because Murphy has failed to demonstrate that he is likely to succeed on the merits of any claim in the September complaint, and no other equitable factors weigh in his favor.

Accordingly, we VACATE the stay of execution in No. 1:23-cv-1170.

I.

Murphy's journey through the federal and state judicial systems has lasted over twenty years and is well documented in numerous opinions. *See e.g., Murphy v. Davis*, 901 F.3d 578 (5th Cir. 2018) (denying one of Murphy's federal habeas corpus petitions). What follows is a brief recitation of the facts and procedural history needed to understand Murphy's current § 1983 actions and motions to stay his execution.

In 2001, a jury convicted Murphy of capital murder, and Texas sought the death penalty. The jury could not impose the death penalty unless it found that "there [was] a probability that [Murphy] would commit criminal acts of violence that would constitute a continuing threat to society." Tex.

Code Crim. Proc. art. 37.071(b)(1). One way—among many others—by which Texas attempted to show Murphy's "future dangerousness" was to implicate him in a kidnapping case. The alleged victim of the kidnapping gave detailed testimony and identified Murphy as the perpetrator. Murphy attacked the credibility of the alleged victim and the reliability of her testimony, but the jury—after hearing additional evidence of future dangerousness—found that Murphy was a continuing threat to society and imposed the death penalty. The Texas Court of Criminal Appeals ("CCA") affirmed on direct appeal. *See Murphy v. State*, 112 S.W.3d 592 (Tex. Crim. App. 2003). Thus began a decades-long post-conviction journey.

Murphy first sought state habeas relief based on new evidence that allegedly cast more doubt on the kidnapping victim's identification; that litigation ended in 2012. Murphy then sought federal habeas relief on numerous grounds; that litigation ended in 2019. Murphy remained on death row.

On March 24, 2023, Murphy filed a motion for post-conviction forensic DNA testing in state court. The trial court denied that motion, and the CCA affirmed on September 26, 2023, though Murphy contends that the mandate in that case has not yet issued. One day later, Murphy filed another state habeas petition accompanied by a motion to withdraw or modify his execution date. The trial court denied the motion to stay execution, and the CCA affirmed on October 5, 2023.[1]

Concurrently with this flurry of state court activity, Murphy filed two separate civil rights actions in the Western District of Texas under § 1983. The September complaint was filed on September 26, 2023. That complaint asserted four violations of Murphy's federal rights. First, Murphy contended

---

[1] We do not know whether the mandate has issued for that decision.

that Texas law has created a right to demonstrate innocence of the death penalty and that the state has violated the federal Constitution's procedural due process protections by denying him access to DNA evidence that he could use to exercise that right. Second, Murphy posited that the restrictions on his access to DNA evidence unconstitutionally limit his ability to seek executive clemency. Third, Murphy averred that he has been deprived meaningful access to the courts. Fourth, and finally, Murphy alleged that 18 U.S.C. § 3599(e) preempts the state-law restrictions on access to DNA evidence.

Murphy's October complaint was filed on October 4, 2023. It alleged four violations of his federal rights. First, he alleged a violation of his Fourteenth Amendment rights because Texas supposedly intends to execute him via lethal injection with expired drugs that have been damaged. Second, Murphy alleged that Texas is violating the due process and the equal protection clauses of the U.S. Constitution by violating state pharmaceutical laws concerning the storage of the lethal injection drugs.[2] Claims three and four of the October complaint mirror the September complaint's allegations regarding deprivation of procedural due process and access to the courts.[3]

Murphy filed motions to stay his execution concurrently with each complaint. He asked the Western District of Texas to stay his execution to allow adjudication of his pending § 1983 claims. On October 6, 2023, the district court granted the September motion for stay, finding that Murphy's procedural due process claim challenging Texas's restrictions on DNA

---

[2] This allegation is confusingly pled. The above is our own attempt to summarize what Murphy is pleading.

[3] The October complaint includes a fifth "claim," but that claim consists only of broadly worded statements that Murphy's federal constitutional rights are being violated and that the federal courts must accordingly provide a remedy.

evidence was likely to succeed on the merits. Also on October 6, the district court denied the October motion for stay, holding that all claims asserted in the October complaint were unlikely to be successful. Texas timely appealed the grant of the September motion. As of this writing Murphy has not appealed the denial of the October motion.

## II.

"We review a district court's grant of a stay of execution for abuse of discretion." *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012). A "stay of execution is an equitable remedy" and "is not available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "The party requesting a stay bears the burden of showing that the circumstances can justify an exercise of [judicial] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In deciding whether to grant a stay of execution, courts must consider four factors:

> (1) [W]hether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).[4]

## III.

We start, where we always must, with jurisdiction. Defendants contend that we have jurisdiction to review the stay of execution under

---

[4] Murphy cites *O'Bryan v. Estelle* to contend that we must apply a more lenient standard where we ask only whether he can show "a substantial case on the merits when a serious legal question is involved." 691 F.2d 706, 708 (5th Cir. 1982) (per curiam). But *O'Brian* pre-dated *Nken*, so its standard is inapplicable. *Cf. Diaz v. Stephens*, 731 F.3d 370, 379 (2013) (applying the *Nken* factors when evaluating a motion to stay execution).

28 U.S.C. § 1292(a). Murphy responds that, because the district court entered a stay and not an injunction, the order is not immediately appealable, and we do not have jurisdiction to review it.

As a general matter, "only final decisions of the federal district courts [are] reviewable on appeal." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981). But Congress has created exceptions to this general rule. One of these exceptions gives courts of appeals jurisdiction over "[i]nterlocutory orders of the district courts" that "grant[], continu[e], modify[], refus[e] or dissolv[e] injunctions." 28 U.S.C. § 1292(a)(1). Though the text of § 1292(a)(1) refers expressly to injunctions, the Supreme Court has made clear that "district courts [cannot] shield [their] orders from appellate review by avoiding the label 'injunction.'" *Abbott v. Perez*, 138 S. Ct. 2305, 2320 (2018) (cleaned up). That means "where an order has the practical effect of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction." *Id.* at 2319.

An order has the "practical effect" of an injunction if it would cause "lawful and important conduct [to] be barred." *Id.* That stands in contrast to stays that "'operate[] upon the judicial proceeding itself,' [but] not on the conduct of a particular actor." *All. For Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *4 (5th Cir. Apr. 12, 2023) (unpublished order) (quoting *Nken*, 556 U.S. at 434).

Altho0ugh the district court used the word "stay" in its opinion, the order undoubtably has the practical effect of an injunction. The order bars Texas officials from carrying out "lawful and important conduct" because it prevents them from performing Murphy's execution. *See Perez*, 138 S. Ct. at 2319. Moreover, the purported "stay" operates not on the judicial

proceeding, but to restrict the actions of specific defendants.[5] That is quintessentially the function of an injunction. Therefore, as our circuit and others have said previously, we have jurisdiction to review a stay of execution on interlocutory appeal.[6] Indeed, as defendants aptly point out, the practice is so commonplace that we have a circuit rule governing it. 5TH CIR. R. 8. *See also Adams*, 679 F.3d at 314, 323 (vacating a stay of execution two days after it was issued). Consequently, we have jurisdiction to review the district court's stay of execution.

## IV.

We start with the September complaint, because the district court granted a stay of execution to allow Murphy to litigate the procedural due process claims raised in this complaint. Murphy contends that Chapter 64 of the Texas Code of Criminal Procedure is facially unconstitutional. He claims the State of Texas unconstitutionally violated his state-created right to challenge his death penalty conviction using DNA evidence. As we explain below, the district court abused its discretion in finding that Murphy's procedural due process claim is likely to succeed on the merits.

---

[5] *Cf. All. For Hippocratic Med. v. Food & Drug Admin.*, 78 F.4th 210, 254 (5th Cir. 2023) ("[U]nlike a preliminary injunction, a stay does not actively prohibit conduct."), *petition for cert. filed* (U.S. Sept. 12, 2013) (No. 23-235), *and petition for cert. filed* (U.S. Sept. 12, 2013) (No. 23-236). Murphy contends that the district court's order was not an injunction because the defendants in this case—the Arlington police chief and the prosecutor—are not among those who could be effectively enjoined from carrying out an execution in Texas. The question under *Perez*, however, is not whether the order *was* an injunction, but whether it had the *practical effect* of an injunction. The order was a stay, but since that stay had the practical effect of an injunction, we have jurisdiction to review it.

[6] *Cf. Cooey v. Strickland*, 588 F.3d 921, 922–23 (6th Cir. 2009) (holding that a stay of execution had the "practical effect" of an injunction); *Howard v. Dretke*, 157 F. App'x 667, 670 (5th Cir. 2005) (same); *Mines v. Dretke*, 118 F. App'x 806, 812 n.27 (5th Cir. 2007) (same).

No. 23-70005

Texas grants convicted defendants the right to seek relief through "a subsequent application for a writ of habeas corpus" upon a showing of "sufficient specific facts establishing . . . by clear and convincing evidence [that], but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072." TEX. CODE CRIM. PROC. art. 11.071 § 5(a)(3).

One way a defendant may satisfy Article 11.071's requirements is with the use of DNA testing evidence. While there is no freestanding right for a convicted defendant to obtain evidence for post-conviction DNA testing, *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 72 (2009), states may create such a right. And that is the case for Texas. Under Chapter 64 of the Texas Code of Criminal Procedure, a defendant may move for post-conviction DNA testing of evidence. TEX. CODE CRIM. PROC. art. 64.01. To do so, Chapter 64 requires a "convicted person [to] establish[] by a preponderance of the evidence that . . . the person would not have been convicted if the exculpatory results had been obtained through DNA testing." *Id.* art. 64.03(a)(2)(A).

By creating a right to obtain evidence for post-conviction DNA testing, Texas must provide convicted defendants with adequate procedures to vindicate that right. *Osborne*, 557 U.S. at 72–74. Given that a defendant has "already been found guilty at a fair trial," he "has only a limited interest in postconviction relief." *Id.* at 69. So "'when a state chooses to offer help to those seeking relief from convictions,' due process does not 'dictate the exact form such assistance must assume.'" *Id.* (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 559 (1987)) (cleaned up). Texas's procedures for postconviction relief do not violate due process rights if the procedure it offers does not "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgress[]

any recognized principle of fundamental fairness in operation." *Id.* (internal quotations omitted).

Murphy asserts Chapter 64 facially violates defendants' procedural due process rights. Specifically, he theorizes that Article 11.07 section 5(a)(3) is rendered illusory because Chapter 64 bars the use of DNA testing to demonstrate a defendant is innocent of the death penalty. The district court determined that claim is likely to succeed on the merits because a district court in the Southern District of Texas had ruled in a prisoner's favor on a similar issue and that case is currently on appeal with our court. That conclusion was an abuse of discretion for three reasons:

*First*, Murphy's procedural due process claim falters at the starting line because he fails to make the necessary showing successfully to mount a facial challenge to the statute. To prevail on a facial challenge, a challenger "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Thus, Murphy must demonstrate that Article 11.071 § 5(a)(3) does not allow any criminal defendant to show he or she is innocent of the death penalty. Murphy cannot meet this burden. The CCA regularly considers—and grants merits review of—applications under Article 11.071 in which a defendant claims he is ineligible for the death penalty.[7] Indeed, Murphy's *own* subsequent habeas petitions fatally wound his instant facial challenge: By raising ineffective assistance of trial counsel, false testimony, suppression of exculpatory evidence, and Eighth Amendment claims under Article 11.071 § 5(a)(3), he has affirmatively demonstrated that section 5(a)(3) provides ample avenues for defendants to show they are innocent of the death penalty.

---

[7] *See, e.g., Ex parte Milam*, No. WR-79,322-04, 2021 WL 197088, at *1 (Tex. Crim. App. Jan. 15, 2021) (per curiam); *Ex parte Weathers*, No. WR-64,302-02, 2012 WL 1378105, at *1 (Tex. Crim. App. Apr. 18, 2012) (per curiam).

Consequently, Murphy's facial challenge fails as a matter of law.

*Second*, Murphy fails to meet his burden to establish that Article 11.071 creates a substantive right to challenge a death penalty conviction with evidence that might persuade a jury to decline to impose the death penalty. Murphy asserts Article 11.071 codifies "the doctrine found in *Sawyer v. Whitley*."[8] But *Ex parte Blue*—the very case Murphy cites—contradicts his assertion: There, the CCA expressly declined to interpret Article 11.071 unequivocally to incorporate *Sawyer* in all its particulars.[9]

Regardless, assuming *arguendo* that Article 11.071 fully codifies *Sawyer* still does Murphy's claim no good. "Evidence that might have persuaded the jury to decline to impose the death penalty is irrelevant under *Sawyer*" because it "has no bearing on [a criminal defendant's] claim of actual innocence of the death penalty." *Rocha v. Thaler*, 626 F.3d 815, 825–26 (5th Cir. 2010). Murphy seeks to use DNA evidence solely for the purpose of showing that he did not commit an extraneous offense the state presented in support of the future-dangerousness special issue. But that claim—even if supported by the DNA evidence—would not have changed Murphy's eligibility for the death penalty; at best, it would only make the death penalty a *less suitable* punishment.

The state presented multiple independent pieces of aggravating evidence from which the jury found a probability that Murphy would be a

---

[8] The Court in *Sawyer* defined the term "innocent of the death penalty" to include both "innocence of the capital crime itself" and "a showing that there was no aggravating circumstance or that some other condition of eligibility had not been met." 505 U.S. 333, 345 (1992).

[9] *Ex parte Blue*, 230 S.W.3d at 160 n.42 ("We hesitate to declare that Article 11.071, Section 5(a)(3) wholly codifies the Supreme Court's doctrine of 'actual innocence of the death penalty,' even inasmuch as it has tied the exception to the bar on subsequent writs to the statutory criteria for the death penalty under Article 37.071.").

future danger. That aggregating evidence includes Murphy's record of theft convictions, testimony about a domestic-abuse call involving him and his girlfriend, a witness who testified that he pulled a gun on her at a high school party, testimony from one of his former coworkers, the results of his Minnesota Multiphasic Personality Inventory-II test, and his murder of eighty-year-old Bertie Cunningham.[10] Thus, even under his erroneous interpretation of Article 11.071, Murphy still fails to show the DNA testing he seeks would make him innocent of the death penalty.[11]

*Third*, Murphy misapplies Chapter 64 to Article 11.071. His claim— that Chapter 64 precludes him from challenging his death sentence by denying the DNA testing he seeks—is belied by the text and structure of the statute. Chapter 64 allows a convicted person to "submit to the convicting court a motion for forensic DNA testing of evidence," Tex. Code Crim. Proc. art. 64.01, which would, in turn, allow the convicting court to "order forensic DNA testing" provided certain statutory conditions are met, *id.* art. 64.03(a).

The statute thus creates an additional mechanism by which a defendant can obtain potentially exculpatory DNA test results. DNA testing results obtained through Chapter 64 *could* be used as part of a defendant's Article 11.071 application to show there are "sufficient specific facts establishing that . . . by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the

---

[10] *Davis*, 901 F.3d at 583, 585; *see also Guevara v. State*, 97 S.W.3d 579, 581 (Tex. Crim. App. 2003) (noting that "[t]he facts of the crime alone can be sufficient to support the affirmative finding to the future dangerousness special issue").

[11] *See Rocha*, 626 F.3d at 825 ("The quality of the mitigation evidence the petitioner would have introduced at sentencing has no bearing on his claim of actual innocence of the death penalty.").

state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072." *Id.* art. 11.071 § 5(a)(3).

But Article 11.071 certainly doesn't require that DNA test results come exclusively from a defendant's Chapter 64 motion. Section 5(a) requires that a subsequent habeas application "contain[] sufficient specific facts," and that neither favors nor disfavors Chapter 64 DNA test results over DNA test results obtained through other means. In sum, Chapter 64— contrary to Murphy's assertion—*expands* the available sources of evidence convicted defendants may use in their subsequent habeas petitions. Consequently, Murphy has failed to identify any facial constitutional infirmity.

The district court ignored all this authority and instead relied solely on *Gutierrez v. Saenz*, 565 F. Supp. 3d 892 (S.D. Tex. 2021). The court in *Gutierrez* first observed that Article 11.071 "grants the substantive right to file a second habeas petition with a clear and convincing showing of innocence of the death penalty." *Id.* at 910. It then found that "Chapter 64 denies the petitioner access to DNA evidence by which a person can avail himself of that right" and violates a petitioner's procedural due process rights. *Id.* at 910–11.

The district court abused its discretion in relying exclusively on *Gutierrez*. That case cites *Rocha* for the proposition that the CCA construed "Article 11.071 . . . to mean that petitioners must make a threshold showing that the applicant is actually innocent of the death penalty." *Id.* But *Rocha* obligates us "to construe and apply section 5(a)(3) as the [CCA] construes and applies it." 626 F.3d at 822. *Gutierrez* disregards that command; it fails to cite any case in which the CCA has held that Article 11.071 creates a substantive right to challenge a death penalty conviction with evidence that

No. 23-70005

might persuade a jury to decline to impose the death penalty. Thus, the district court could not have relied on Gutierrez's reasoning to conclude that Murphy had met his burden of showing a cognizable liberty or property interest—as is necessary for a procedural due process claim. *See Richardson v. Hughs*, 978 F.3d 220, 229 (5th Cir. 2020).

Furthermore, the defendant in *Gutierrez* sought DNA evidence under Chapter 64 to demonstrate innocence of the death penalty by casting doubt on whether he had committed the underlying crime for which he was convicted.[12] He wanted DNA evidence to show that he was not in the home of the victim at the time of the murder. That means the DNA evidence sought in *Gutierrez* would provide evidence directly relevant to the degree of culpability of the crime for which he was being sentenced. Here, in contrast, Murphy seeks DNA evidence not to challenge his guilt of the underlying crime, but to show that he did not commit an extraneous offense the state presented in support of the future-dangerousness special issue.

That factual distinction makes all the difference: As we explained above, "[e]vidence that might have persuaded the jury to decline to impose the death penalty . . . has no bearing on [a criminal defendant's] claim of actual innocence of the death penalty." *Rocha*, 626 F.3d at 825–26. Therefore, even if *Gutierrez* was correctly decided, it is not applicable to Murphy's situation because Murphy is not attempting to demonstrate innocence of the death penalty by attacking his underlying conviction. Rather, the DNA evidence he seeks is relevant to the special issue on future dangerousness, which encompasses a much broader category of potential

---

[12] *See Ex parte Gutierrez*, 337 S.W.3d 883, 888 (Tex. Crim. App. 2011) (noting Gutierrez's argument that "exculpatory DNA test results . . . would show, by a preponderance of the evidence, that he would not have been convicted of capital murder.").

evidence.

Despite *Gutierrez*'s non-binding nature as an opinion from a district court, and further despite its questionable reasoning and inapplicability to our facts, the district court *à quo* used *Gutierrez* to conclude that Murphy has shown a likelihood of success on the merits because the issue Murphy seeks a stay of execution to litigate is now on appeal before our court. Rank speculation about the potential outcome of a case pending appeal does not support the district court's finding of a likelihood of success on the merits.[13] The district court abused its discretion by relying on the fact that *Gutierrez* is pending on appeal to grant a stay of execution.

Even if our precedent allowed the district court to rely on a pending appeal, the unique procedural history of *Gutierrez* counsels strongly against doing so in this case. In 2020, Gutierrez sought a stay of execution so he could litigate "the constitutionality of Chapter 64 of the Texas Code of Criminal Procedure" and Texas's "policy refusing to allow chaplains to accompany inmates into the execution chamber itself." *Gutierrez v. Saenz*, 818 Fed. App'x 309, 311 (5th Cir. 2020). The district court granted a stay of execution, but our court reversed. *Id.* at 313. We rejected Gutierrez's facial and as-applied procedural due process challenges to Chapter 64 as well as his spiritual-advisor claim. *Id.* at 312. The Supreme Court then granted certiorari, vacated, and remanded for further consideration of the spiritual-advisor claim. *See Gutierrez v. Saenz*, 141 S. Ct. 1260, 1260 (2021).

---

[13] *Cf. Wicker v. McCotter,* 798 F.2d 155, 158 (5th Cir. 1986) ("In the absence of a declaration by the [higher court] that the executions should be stayed in cases presenting the issue raised by [Murphy], we must follow our circuit's precedents and deny . . . a stay of execution on this issue."); *Moreno v. Collins*, No. 94-50026, 1994 U.S. App. LEXIS 41477, at *3 (5th Cir. Jan. 17, 1994) (per curiam) ("[T]he grant of certiorari by the United States Supreme Court to review an issue settled in this circuit does not itself require a stay of execution.").

No. 23-70005

On remand, *Gutierrez* again challenged Chapter 64, and the district court again ruled in his favor. *Gutierrez*, 565 F. Supp. 3d at 908. The *Gutierrez* district court distinguished our earlier reasoning on the sole basis that Gutierrez's new Chapter 64 claim was "legally distinct" from the one we had rejected because the new claim challenged Chapter 64's denial of evidence "that would demonstrate he is innocent of the death penalty," whereas the claim we had ruled on previously challenged Chapter 64's denial of evidence that would "demonstrate innocence of capital murder." *See id.*

We do not, and cannot, know how our court will ultimately resolve *Gutierrez*. But the difference between Gutierrez's rejected Chapter 64 claim and his current one is so small that it cannot be fairly said that the pending appeal gives Murphy a likelihood of success in this case.

Finally, the district court also determined that the possibility of irreparable harm weighs heavily in Murphy's favor. It is true that this factor typically favors the movant in a capital case. *See O'Bryan*, 691 F.2d at 708. However, the procedural posture of this case is unique. The CCA denied Murphy's request for DNA testing both because Chapter 64 bars it as a matter of law and because Murphy had unreasonably delayed in requesting DNA testing. *See Murphy v. State*, No. AP-77,112, 2023 WL 6241994, at *4–5 (Tex. Crim. App. Sept. 26, 2023). This second holding is crucial because, even if the application of Chapter 64 violates Murphy's procedural due process rights, he still would not be entitled to the DNA testing he seeks under the state court's alternative holding of unreasonable delay.

Therefore, the district court erred in concluding that Murphy would suffer irreparable harm in not being able to pursue his procedural due process claims. Rather, the balance of equities weighs against granting Murphy's motion for stay of execution: Both the state and victims of crime have a "powerful and legitimate interest in punishing the guilty." *Calderon v.*

*Thompson*, 523 U.S. 538, 556 (1998) (internal quotations omitted). And "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (internal quotations omitted). Even apart from the likelihood-of-success inquiry, the district court abused its discretion in concluding the balance of equities weighs in favor of granting Murphy's motion for stay of execution.

## V.

It does not appear that the district court relied on any other claim in Murphy's September complaint when granting the stay of execution. To the extent that it did, it abused its discretion because none of Murphy's other claims is likely to succeed.

First, Murphy contends Chapter 64 unconstitutionally limits his ability to seek executive clemency. Problematically for him, Murphy's claim is premised on his assumption that Chapter 64 facially violates defendants' procedural due process rights under Article 11.071. But as we have already explained, that assumption holds no water. If anything, Chapter 64 makes it *easier* for convicted defendants to seek executive clemency since it *expands* the avenues by which a defendant may obtain DNA test results. Furthermore, Murphy fails to cite any case in which the denial of DNA testing violated a defendant's procedural due process right to present a clemency claim.[14] Murphy has therefore failed to bear his burden of proving that any procedural due process violation exists.[15]

---

[14] Nor is there a substantive due process right to executive clemency. *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981).

[15] *See Richardson*, 978 F.3d at 229 (noting plaintiff bears the burden of establishing a cognizable liberty or property interest to state a procedural due process claim).

No. 23-70005

Next, Murphy contends the denial of DNA testing deprives him of his right to adequate, effective, and meaningful access to the courts. That contention lacks merit. The right of access to the courts does not include the ability "to *discover* grievances[] and to *litigate effectively* once in court."[16] Murphy seeks to compel the state to provide DNA testing on the mere hope that its results would support some speculative and hypothetical claim in the future. That is nothing more than an attempt "to discover grievances." *Casey*, 518 U.S. at 354 (emphasis removed).

A request for DNA testing, by itself, does not tend to prove or disprove Murphy's claim that he is innocent of the death penalty. The DNA testing "may prove exculpatory, inculpatory, or inconclusive. In no event will a judgment that simply orders DNA tests necessarily impl[y] the unlawfulness of the State's custody." *Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (internal quotations omitted). As a result, Murphy fails to show he has been denied his right of access to the courts.

Finally, Murphy contends 18 U.S.C. § 3599(e) entitles him to representation through all available post-conviction process, including applications for stays of execution and clemency proceedings. There is no merit to Murphy's final theory. That statute "authorizes federal courts to provide funding to a party who is facing the prospect of a death sentence and is 'financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services.'" *Ayestas v. Davis*, 138 S. Ct. 1080, 1092 (2018) (quoting 18 U.S.C. § 3599(a)(1)). It is merely a funding law and "not a law that grants federal courts authority to oversee the scope and nature of federally funded legal representation." *Beatty v. Lumpkin*,

---

[16] *Lewis v. Casey*, 518 U.S. 343, 354 (1996); *see Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013) (per curiam) ("One is not entitled to access the courts merely to argue that there might be some remote possibility of some constitutional violation.").

No. 23-70005

52 F.4th 632, 634 (5th Cir.) (per curiam), *cert. denied*, 143 S. Ct. 416 (2022).

For these reasons, Murphy has failed to show a likelihood of success on the merits on any claim in his September complaint. To the extent the district court relied on any claim other that the Chapter 64 challenge in granting the September motion to stay, it abused its discretion.

\* \* \* \* \*

Accordingly, the district court abused its discretion in granting Murphy's September motion to stay execution. Accordingly, we VACATE the stay of execution entered in No. 1:23-cv-1170. The mandate shall issue forthwith.

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

October 10, 2023

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

    No. 23-70005   Murphy v. Nasser
                 USDC No. 1:23-CV-1170

Enclosed is a modified opinion entered in this case in which Judge
Graves concurrence has been added.

                 Sincerely,

                 LYLE W. CAYCE, Clerk

                 By: _____
                 Nancy F. Dolly, Deputy Clerk
                 504-310-7683

Ms. Catherine Clare Bernhard
Ms. Katherine Froyen Black
Mr. Philip Devlin
Mr. Russell David Hunt Jr.
Mr. Ali Mustapha Nasser